CITY OF KNOXVILLE v. HOOD (two cases).—97 S. W. (2d) 446.

Eastern Section.    March 28, 1936.

Petition for Certiorari denied by Supreme Court, October 10, 1936.

Frank Montgomery, of Knoxville, for plaintiff in error.

Hartman, Hartman & Doughty, of Knoxville, for defendants in error.

McAMIS, J.  Mrs. Lizzie Hood fell and sustained personal injuries while walking eastwardly upon the sidewalk extending along the south side of Yale avenue in the city of Knoxville.  Alleging negligence in the maintenance of the sidewalk, she instituted the present action for damages.  Claude Hood, the husband, also instituted suit for loss of services, etc.  The two cases were tried together before the circuit court without a jury and judgments went against the city, from both of which it has appealed.

It is shown in proof that the sidewalk where Mrs. Hood fell is six feet wide and is constructed of concrete.  According to photographs appearing in the record, expansion joints running crosswise of the walk appear to have been left about three feet apart.  At some time prior to the date of the accident, one of the sections became slightly elevated above the adjacent section.  By actual measurement, this difference in level varied from $\frac{1}{4}$ of an inch on the south side of the walk to $1\frac{1}{16}$ of an inch on the north side.  Measurements were made at two intermediate points and showed a difference in elevation of $\frac{5}{8}$ of an inch at one of these points and $\frac{9}{16}$ of an inch at the other.  Mrs. Hood testified she was walking on the south side next to the property line and the elevation at the particular point where she stumbled must have been somewhere between $\frac{1}{4}$ and $\frac{5}{8}$ of an inch.  There is also evidence to the effect

that there was a cavity about ½ inch in depth and about the size of the toe of a lady's shoe under the top crust of the elevated section. Mrs. Hood testified that it was in this small cavity that she caught the toe of her shoe, causing her to fall.

It is the insistence of the city that if this condition of the sidewalk could be classified as a defect at all, it was too trivial to create any liability for plaintiff's injuries.

The general principles governing the liability of a municipality for failure to properly maintain its streets and sidewalks are too well established to necessitate an extended citation of cases dealing generally with this subject.

In Jackson v. City of Nashville, 17 Tenn. App., 413, 68 S. W. (2d), 137, 138, the rule is stated as follows:

■ "City is liable for violation of its duty in failing to repair, or in neglecting or permitting obstructions, or in maintaining or permitting dangerous places in streets or sidewalks. . . . 'To be actionable the obstruction must be dangerous, and the danger must be such as a reasonably prudent person would have anticipated as a natural and probable result. . . . To establish negligence it must be shown that the injury sustained is one that would probably flow from allowing that obstruction as it existed.' 7 McQuillin on Municipal Corporations, 125, 128, sec. 2956, and p. 151, sec. 2969; 43 C. J., 1009, 1010, 1014."

We think the foregoing are the ruling principles applicable to this case and there being no jury verdict it becomes the duty of the court to apply these principles to the facts of the case to determine whether a case of actionable negligence has been established.

Pretermitting the question of whether the condition of the sidewalk was such that constructive notice and knowledge of the alleged defect may be imputed to the city, we may confine the issue to the sole question of whether the city was guilty of actionable negligence in permitting the sidewalk to remain in the condition already described. We think this question must be answered in the negative.

■■ "A municipality cannot be expected to maintain the surface of its sidewalks free from all inequalities and from every possible obstruction to mere convenient travel, and slight inequalities or depressions or differences in grade, or a slight deviation from the original level of a walk due to the action of frost in the winter or spring, and other immaterial obstructions, or trivial defects which are not naturally dangerous, will not make a municipality liable for injuries occasioned thereby. The fact that the surface of a walk may have become uneven from use, or that bricks therein may have become loose or displaced by the action of the elements, so that persons are liable to stumble . . . does not necessarily involve the municipality in liability, so long as the defect

can be readily discovered and easily avoided by persons exercising due care, or provided the defect be of such a nature as not of itself to be dangerous to persons using the walk. . . . A difference in height between adjoining sections of a walk may render the municipality liable to pedestrians who stumble over it, but slight differences in the level of the adjacent portions will not have that effect. . . ." 13 R. C. L., 397, 398.

The author of the text cites the case of Gastel v. City of New York, 194 N. Y., 15, 86 N. E., 833, 834, 128 Am. St. Rep., 540, 16 Ann. Cas., 635, in support of the concluding sentence of the above quotation with reference to slight differences in the level of adjacent portions of the walk. This case we have examined and find the facts to be quite similar to the facts of this case. In the case cited the difference in level of the two sections of the walk was about one inch—a fraction of an inch more than here—and there was the further distinction that a jury verdict supported the recovery in the lower court. 126 App. Div., 936, 110 N. Y. S., 1129. However, notwithstanding the verdict of the jury and evidence of other accidents at the same place, the court held that the case should not have gone to the jury, but should have been dismissed. The court classified the condition described as trivial and remarked at length upon the impracticability of requiring the City to remove all such places. The court said:

"We think we may take judicial notice of the fact which ordinary observation discloses that there is scarcely a rod in the streets of any city in which there may not be discovered some little unevenness or irregularity in sidewalks, crosswalks, curbs, or pavements. As the result of various causes, climatic and otherwise, they are constantly occurring or recurring. Ordinarily they cause no difficulties, and it would require a vast expenditure of money to remove them all."

We think the condition of the sidewalk must be held to be trivial and that it cannot be said that the city failed to exercise reasonable care and prudence in failing to foresee that an injury such as plaintiff received would probably result from allowing it to remain. Under the authority of Jackson v. Nashville, supra, we think actionable negligence was not shown, and that the judgment below must be reversed and the suits dismissed.