IN THE SUPREME COURT OF TENNESSEE
AT JACKSON

**FOR PUBLICATION**

HAZEL MAXINE COLN and )
husband, CARL F. COLN, )
)
Appellants, )
)
Vs. )
)
)
CITY OF SAVANNAH, TENNESSEE, )
)
Appellee. )

and

DEBBIE VANCLEAVE, )
)
Appellant, )
)
Vs. )
)
)
MATTHEW MARKOWSKI and )
wife, DIANE MARKOWSKI, )
)
Appellees. )

**Filed: March 30, 1998**

HARDIN LAW

HON. JULIAN P. GUINN, JUDGE

No. 02-S-01-9702-CV-00008

**FILED**

**March 30, 1998**

MADISON LAW
**Cecil Crowson, Jr.**
**Appellate Court Clerk**

HON. WHIT LAFON, JUDGE

No. 02-S-01-9704-CV-00026

**For Appellants, Coln:**
Edward L. Martindale, Jr.
DREW AND MARTINDALE
Jackson, Tennessee

**For Appellant, Vancleave:**
James H. Bradberry
JAMES H. BRADBERRY
  & ASSOCIATES
Dresden, Tennessee

**For Amicus Curiae, Tennessee
Trial Lawyers Association:**
John A. Day
Donald Capparella
Nashville, Tennessee
     and
Jeffrey A. Garrety
Jackson, Tennessee

**For Appellee, City of Savannah:**
James A. Hopper
Savannah, Tennessee

**For Appellees, Markowski:**
Russell E. Reviere
Bradford D. Box
RAINEY, KIZER, BUTLER, REVIERE
  & BELL, P.L.C.
Jackson, Tennessee

**For Amicus Curiae, Tennessee
Municipal Attorneys Association:**
Todd Moore
HAYNES & FREEMAN, PLC
Goodlettsville, Tennessee

# O P I N I O N

COLN: COURT OF APPEALS REVERSED AND
TRIAL COURT JUDGMENT REINSTATED.

VANCLEAVE:  COURT OF APPEALS REVERSED
AND CASE REMANDED TO TRIAL COURT.                    ANDERSON, C.J.

We granted permission to appeal in two premises liability cases to determine a common question to both - whether and to what extent the traditional open and obvious rule eliminating a landowner's duty to one injured as a result of an open and obvious danger continues to be viable after the adoption of comparative fault in McIntyre v. Balentine, 833 S.W.2d 52 (Tenn. 1992).[1]

In the first premises liability case, Coln v. City of Savannah, the trial judge implicitly found a landowner duty and, applying comparative fault principles, found that the injured plaintiff, who tripped over brick pavers installed in the sidewalk by the City, was 30 percent negligent and the City was 70 percent negligent, and awarded damages accordingly. The Court of Appeals reversed, implicitly acknowledging a duty owed by the City but finding that the plaintiff was at least 50 percent negligent because "the condition of the sidewalk was obvious to the extent that a reasonably prudent person should have recognized the potential hazard that it presented."

In the second case, Vancleave v. Markowski, the trial judge, implicitly finding no landowner duty, granted summary judgment to the landowner after finding that the opening in a pool deck on which the plaintiff fell and was injured was "clearly visible and not concealed and that anyone walking on the premises should have been able to observe it." The Court of Appeals affirmed.

After reviewing the two cases before us, the extensive literature, our Tennessee cases on the subject, and cases from other jurisdictions, we conclude that an open and obvious danger does not automatically result in a finding of no duty and therefore no landowner liability. As in any negligence action, we think a risk is unreasonable and gives rise to a duty to act with due

---

[1] We have consolidated these cases pursuant to Tenn. R. App. P. 16(b), because they contain a common question of law.

care if the foreseeable probability and gravity of harm posed by a defendant's conduct outweigh the burden upon the defendant to engage in alternative conduct that would prevent the harm. McCall v. Wilder, 913 S.W.2d 150 (Tenn. 1995). Applying this analysis, if the foreseeability and gravity of harm posed by the defendant's conduct, even if "open and obvious," outweigh the burden upon the defendant to engage in alternative conduct, the defendant has a duty to act with reasonable care and the comparative fault principles apply under McIntyre v. Balentine, supra.

After reviewing the record in each case and applying this rule, we reverse the Court of Appeals' judgment in Coln v. City of Savannah and reinstate the judgment of the trial court awarding damages. We also reverse the Court of Appeals' summary judgment in Vancleave v. Markowski and remand to the trial court for proceedings consistent with this opinion.

## BACKGROUND

### Coln v. City of Savannah

In June of 1992, the City of Savannah ("City") contracted to have decorative brick pavers installed in front of the entrance of its City Hall building. The brick pavers were installed on top of a bed of sand in an area approximately thirteen and one-half feet wide by sixteen and one-half feet long; the surface of the pavers when installed was below the level of the adjacent concrete sidewalk that led to the door of the City Hall building.

On November 2, 1992, the plaintiff, Hazel Coln, who was 68 years of age, walked across the brick pavers toward the entrance of the building and tripped on the lip of the concrete sidewalk adjacent to the brick pavers. She fell, injuring her left wrist and arm. Coln conceded that the weather had been clear

and sunny, and that nothing prevented her from seeing the brick pavers or the sidewalk.[2]

William Gilchrist, the landscape designer who installed the brick pavers, testified that there was a deviation approximately three-eighths of an inch between the pavers and sidewalk when the pavers were installed. Gilchrist testified that the deviation was due to the settling of sand beneath the pavers, as well as a hump in the concrete sidewalk. When he installed the brick pavers, Gilchrist told Bill Fox, the assistant manager for the City, that a deviation existed and that half of the pavers would have to be replaced to correct the deviation.

Fox testified that he knew about the deviation between the pavers and the sidewalk, but felt that it was acceptable and should not be corrected. Paul Lebovitz, a landscape architect, testified that it is reasonable to expect some deviation between the two surfaces when pavers are installed near a concrete sidewalk but that pavers are accepted in the industry as a safe walkway material. There was also evidence that the size of the deviation was several inches greater at the time the plaintiff was injured.

The plaintiffs alleged that the City "had negligently and carelessly left [the area of the new brick pavers] defective and in disrepair" and that the City had created "a dangerous condition for the plaintiff and any other person walking down said sidewalk." The trial court rejected the City's reliance on government immunity provisions[3] after finding that the sidewalk was defective, unsafe, and dangerous:

---

[2] The plaintiff acknowledged that she suffered from several medical ailments, some of which resulted in occasional fainting or dizziness. She did not testify that she had such a spell on the day and time in question.

[3] See Tenn. Code Ann. § 29-20-201(a)(Supp. 1997)(governmental immunity) and Tenn. Code Ann. § 29-20-203(a)(Supp. 1997)(removal of immunity for "defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway....").

> [The defendant] surprisingly knew of [the deviation] in its inception, but accepted it and made no attempt to correct it. . . .They created and maintained the defective, unsafe and dangerous condition and . . . this condition was the proximate cause of the injuries suffered or experienced by the Plaintiff wife.

Accordingly, the trial court apportioned 30 percent of the negligence to the plaintiff and 70 percent to the City.

On appeal, the City contended that the trial court erred in finding that the sidewalk was defective, unsafe, or dangerous, and that the trial court should have found that the plaintiff was at least 50 percent negligent because the condition of the sidewalk was "open and obvious." The Court of Appeals noted that the "open and obvious" rule traditionally removed any duty owed by a defendant to a plaintiff who is injured as a result of dangerous conditions that are open and obvious, but said that the rule was subsumed by the comparative fault system adopted in McIntyre v. Balentine, supra. Thus, the court held:

> We adhere to the concept that there is no liability on the person or entity in control of premises if a person lawfully thereon fails to exercise reasonable care for his or her own safety or for dangers that are obvious, reasonably apparent, or as well known to the injured party as to the owner, operator or person in control of the premises, so long as the plaintiff's negligence is equal to or greater than the defendant's negligence. . .. Otherwise stated, we are of the opinion that the duty of the plaintiff has not been changed but plaintiff's failure to meet her duty must be compared to the negligence of the tortfeasor. . . .

The court then concluded that plaintiff Coln was at least 50 percent negligent under the facts of this case, and reversed the judgment.[4]

## Vancleave v. Markowski

---

[4] The Court of Appeals therefore did not address the defendant's contentions with regard to the governmental immunity provisions of the Tennessee Government Tort Liability Act.

In October of 1993, the plaintiff, Debbie Vancleave, was a guest at the home of the defendants, Matthew and Diane Markowski. According to their depositions, Vancleave and Diane Markowski went into the backyard to the deck area around a swimming pool, where they walked, talked and surveyed the landscaping in the yard. Vancleave, who was walking behind Markowski, fell into an opening in the deck area that was eighteen inches wide and three feet long. The opening normally contained a skimmer used for cleaning the pool, but it had been removed for the fall and winter months. Vancleave's right knee went into the opening, and she also injured her left ankle.

The plaintiff filed suit alleging negligence, and the landowners filed a motion for summary judgment on the basis that the opening in the deck was an open and obvious condition. The trial court agreed, finding that "the plaintiff was injured on an opening in the deck which was clearly visible and not concealed and that anyone walking on the premises should have been able to observe it." The Court of Appeals affirmed the order granting summary judgment to the defendants.

## SUMMARY

In each of these premises liability cases, the plaintiff contends that the open and obvious rule does not preclude finding a duty owed by the defendant landowner and that an open and obvious danger is merely a factor for consideration in determining comparative fault under McIntyre v. Balentine. The landowner defendants in both cases maintain that the rule is intact: that there is no duty of care when an open and obvious condition results in injury to the plaintiff. The City of Savannah in Coln also contends that the plaintiff was at least 50 percent negligent, barring recovery under comparative fault. The Court

of Appeals' analysis in each case reflects the conflicting views about duty and comparative fault it has expressed in a series of its unpublished decisions.[5]

We granted and consolidated these appeals to resolve the conflicting views and to determine the viability of the "open and obvious" rule after McIntyre; specifically, whether an "open and obvious" condition relieves a defendant's duty of care or whether it merely is considered in assessing the comparative fault of the parties.

## NEGLIGENCE PRINCIPLES

A negligence claim requires proof of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause. Bradshaw v. Daniel, 854 S.W.2d 865, 869 (Tenn. 1993).

The initial requirement, the existence of a legal duty, is a question of law for the court which requires consideration of whether "such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of others -- or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant." Id. at 870 (quoting, W. Page Keeton, Prosser & Keeton on the Law of Torts, § 37 at 236 (5th ed. 1984)).

---

[5] The Court initially indicated that the open and obvious rule was subsumed by comparative fault principles. Broyles v. City of Knoxville, No. 03A01-9505-CV-00166 (Tenn. App., E.S., Aug. 30, 1995); Cooperwood v. Kroger Food Stores Inc., No. 02A01-9308-CV-00182 (Tenn. App., W.S., Dec. 30, 1994). Subsequent decisions indicated that the open and obvious rule was not changed by McIntyre's adoption of comparative fault. Tracy v. Exxon Corp., No. 02A01-9512-CV-00277 (Tenn. App., W.S., Dec. 31, 1996); Jones v. Exxon Corp., No. 02A01-9507-CV-00159 (Tenn. App., W.S., Aug. 27, 1996); Shope v. Radio Shack, No. 03A01-9508-CV-00288 (Tenn. App., E.S., Dec. 7, 1995).

In McCall v. Wilder, supra, we explained that "a risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm."  Among the factors for consideration are

> the foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct.

913 S.W.2d at 153.

The determination of whether a duty is owed requires a balancing of the foreseeability and gravity of the potential harm against the burden imposed in preventing that harm.  McClung v. Delta Square Ltd. Partnership, 937 S.W.2d 891, 901 (Tenn. 1996).  Assuming a duty of care is owed, be it a duty to refrain from creating a danger or a duty to warn against an existing danger, it must then be determined whether a defendant has conformed to the applicable standard of care, which is generally reasonable care under the circumstances.  "Ordinary, or reasonable, care is to be estimated by the risk entailed through probable dangers attending to the particular situation and is to be commensurate with the risk of injury."  Doe v. Linder Const. Co., Inc., 845 S.W.2d 173, 178 (Tenn. 1992).

If the plaintiff meets the burden of establishing the defendant's duty in a particular case, as well as the other elements of the negligence claim, the trier of fact must apply the principles of McIntyre v. Balentine, supra.  In that case we joined nearly every jurisdiction in holding that a plaintiff's contributory negligence no longer would bar recovery against a tortfeasor and adopting a

system of comparative negligence in which the plaintiff's negligence is compared to the fault of the defendant or defendants.[6] A plaintiff whose negligence is less than that of a tortfeasor may now recover damages reduced by a percentage of the plaintiff's own negligence. 833 S.W.2d at 54.

Our holding in McIntyre was a fundamental change in negligence law in Tennessee. It was based on considerations of fairness and consistency, as well as to avoid the inconsistent and often harsh results to plaintiffs whose negligence was far less than that of a defendant or defendants. Although we have since analyzed the effect of adopting comparative fault on a number of common law negligence doctrines, see, e.g., Perez v. McConkey, 872 S.W.2d 897 (Tenn. 1994)(implied assumption of risk), we now address for the first time its effect on the traditional "open and obvious" danger doctrine.

## OPEN AND OBVIOUS DOCTRINE

In premises liability cases, application of duty principles resulted in imposing a duty on an owner or possessor of premises to exercise reasonable care under the circumstances to a guest (licensee) or business invitee.[7] The duty includes the responsibility of either removing or warning against any latent or hidden dangerous condition on the premises of which one was aware or should have been aware through the exercise of reasonable diligence. Eaton v. McLain, 891 S.W.2d 587, 594 (Tenn. 1994); Smith v. Inman Realty Co., 846 S.W.2d 819, 823 (Tenn. App. 1992).

---

[6] We have since distinguished comparative negligence from comparative fault. The former is the measure of the plaintiff's negligence in percentage terms that reduces the plaintiff's recovery. The latter encompasses the determination of how to apportion damage recovery among multiple or joint tortfeasors according to the percentage of fault attributable to each. Owens v. Truckstops of America, 915 S.W.2d 420, 425 n. 7 (Tenn. 1996).

[7] At one time, there was a distinction in the duty owed to a licensee as opposed to an invitee. This distinction has since been abolished. Hudson v. Gaitan, 675 S.W.2d 699 (Tenn. 1984).

Because the rationale for the imposition of this duty was partly the "owner's superior knowledge of a perilous condition on his premises," a rule of no-liability also was derived: that a premises owner has no liability for injuries sustained from dangers that were "obvious, reasonably apparent, or as well known to the invitee [or licensee] as to the owner." Kendall Oil Co. v. Payne, 293 S.W.2d 40, 42 (Tenn. App. 1955); see also McCormick v. Waters, 594 S.W.2d 385, 387 (Tenn. 1980). In many jurisdictions, this so-called "open and obvious" rule was frequently explained in terms of duty, that is, a defendant has no duty to warn or protect against a known or obvious danger. Other jurisdictions analogized the open and obvious rule to contributory negligence or assumption of risk, doctrines that also barred a plaintiff's recovery for negligence. See Keeton, Personal Injuries Resulting From Open and Obvious Conditions, 100 U. Pa. L. Rev. 629 (1952). Regardless of the terminology, the result was the same: no recovery.

Despite its traditional application by many courts, the open and obvious doctrine was widely criticized for producing arbitrary results and being "wrong in policy." James, Tort Liability of Occupiers of Land: Duties Owed to Licensees and Invitees, 63 Yale L.J. 605, 628 (1954). As one commentator said:

> [T]here is perhaps no condition the danger of which is so obvious that all [persons] under all circumstances would necessarily see and realize the danger in the absence of contributory negligence, and this is particularly true if the further principle so often repeated is accepted that the customer or business invitee is entitled to assume that the premises are reasonably safe for his use.

Keeton, supra, 100 U. Pa. L. Rev. at 642. Another writer observed that the open and obvious rule failed to consider all the relevant circumstances:

> An undeniable legal error is committed every time a court bars recovery to an injured person based solely on the fact that the perilous nature of the alleged cause of harm was 'apparent to all,' without any

consideration of the multitude of other factors which
may justify or excuse the plaintiff's conduct.

Phillips, Assumption of the Risk Returns in Disguise as the Open and Obvious

Doctrine Defense, 30 ISBA Tort Trends 4 at 10 (1995).

In addition to these criticisms, the adoption of comparative fault

principles led numerous jurisdictions to reconsider the open and obvious rule and

to conclude that it should not automatically preclude recovery.[8]  As the

Mississippi Supreme Court observed:

> Emerging from other jurisdictions is a modern trend
> toward holding that the obviousness of a danger does
> not necessarily relieve the owner's duty of care.
> Moreover, many states have limited the use of this
> doctrine by holding that a plaintiff's knowledge or the
> obviousness of a dangerous condition does not
> preclude recovery, and, some instances, states have
> expressly abolished the open and obvious doctrine
> after the adoption of comparative negligence.

Tharp v. Bunge Corp., 641 So.2d at 24.  The Illinois Supreme Court agrees that

"[t]he manifest trend of the courts in this country is away from the traditional rule

absolving, ipso facto, owners and occupiers of land from liability for injuries

resulting from known or obvious conditions. . . ."  Ward v. K Mart Corp., 554

N.E.2d at 231.

Nearly every jurisdiction has also relied upon the Restatement

(Second) of Torts, § 343A, which states the rule as follows:

> (1) A possessor of land is not liable to his invitees for
> physical harm caused to them by any activity or
> condition on the land whose danger is known or
> obvious to them, unless the possessor should

---

[8]  See Regency Lake Apartments Association, Ltd. v. French, 590 So.2d 970 (Fla. App. 1991); Harrison v. Taylor, 768 P.2d 1321 (Idaho 1989); Ward v. K Mart Corp., 554 N.E.2d 223 (Ill. 1990); Konicek v. Loomis Brothers, Inc., 457 N.W.2d 614 (Iowa 1990); Bertrand v. Alan Ford, Inc., 537 N.W.2d 185 (Mich. 1995); Tharp v. Bunge Corp., 641 So.2d 20 (Miss. 1994); Parker v. Highland Park, Inc., 565 S.W.2d 512 (Tex. 1978); Laesch v. L & H Ind., Ltd., 469 N.W.2d 655 (Wis. Ct. App. 1991).

> anticipate the harm despite such knowledge or
> obviousness.

(Emphasis added). The word "'known' denotes not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves," and the word "'obvious' means that both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." Restatement (Second) of Torts, § 343A (comment b). The restatement further provides that the premises owner's duty exists if the harm can or should be anticipated notwithstanding the known or obvious danger:

> Such reason to expect harm to the visitor from known
> or obvious dangers may arise, for example, where the
> possessor has reason to expect that the invitee's
> attention may be distracted, so that he will not
> discover what is obvious, or will forget what he has
> discovered, or fail to protect himself against it. Such
> reason may also arise where the possessor has
> reason to expect that the invitee will proceed to
> encounter the known or obvious danger because to a
> reasonable man in his position the advantages of
> doing so would outweigh the apparent risk.

Restatement (Second) of Torts, § 343A (comment f). As the Michigan Supreme Court has said: "If the risk of harm remains unreasonable, despite its obviousness or despite knowledge of it by the invitee, then the circumstances may be such that the [defendant] is required to undertake reasonable precautions [and] the issue then . . . is for the jury to decide." Bertrand v. Alan Ford, Inc., 537 N.W.2d at 187.

Although a few courts have held that comparative fault principles abrogate the open and obvious rule entirely,[9] the majority follow the Restatement position and recognize that duty remains a necessary part of the analysis. In Ward v. K Mart, supra, for example, the Illinois Supreme Court explained:

---

[9] See, e.g., Harrison v. Taylor, 768 P.2d at 1321; Tharp v. Bunge Corp., 641 So.2d at 25.

-12-

> [W]e recognize that the Restatement speaks to the more general question of liability, and not specifically to the existence of a duty. <u>But we think the principles expressed there are consistent with the general duty of reasonable care owed to invitees and licensees, and they are relevant to the resolution of whether an injury was reasonably foreseeable.</u> We emphasize, however, that since the existence of a duty turns in large part on public policy considerations, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden upon the defendant, as well as the likelihood of injury and the possible serious nature of such an injury must also be taken into account.

554 N.E.2d at 232 (emphasis added). The analysis, therefore, as in any negligence case, is first upon duty in accordance with the foreseeability and gravity of harm, and the feasibility and availability of alternatives; if a duty is imposed, then the surrounding circumstances are analyzed under the principles of comparative fault.[10]

## TENNESSEE LAW

We agree with the rationale of the majority of courts which have limited or restricted the traditional "open and obvious" rule in favor of the Restatement approach. We also agree that attempting to analyze the duty issue simply by labeling some conditions "open and obvious," without consideration of any surrounding circumstances, promotes arbitrary and inconsistent results. Moreover, the open and obvious rule is inconsistent with our cases which analyze duty by balancing foreseeability and gravity of harm with feasibility and availability of alternatives that would have avoided the harm.

---

[10] See Regency Lake Apartments Association Ltd. v. French, 590 So.2d at 973 (comparative negligence applied where plaintiff tripped over exposed tree roots within apartment complex); Ward v. K Mart Corp., 554 N.E.2d at 231 (court applied comparative negligence where plaintiff walked into concrete column while carrying large object from defendant's store); Konicek v. Loomis Brothers, Inc., 457 N.W.2d at 618 (comparative negligence where plaintiff's injury resulted from open and obvious hole in roof); Parker v. Highland Park, Inc., 565 S.W.2d at 517 (court employed comparative negligence where plaintiff injured falling on dark stairway); Laesch v. L & H Industries, Ltd., 469 N.W.2d at 659 (open and obvious defense rejected under restatement approach); cf. Buechelers v. Chicago Park Dist., 665 N.E.2d 826 (Ill. 1996)(no duty to warn against diving into open waters).

We deem the Restatement approach to be the better reasoned and more persuasive analysis. The principles stated in the Restatement (Second) of Torts, § 343(A) relate directly to foreseeability and facilitate consideration of the duty issue. Whether the danger was known and appreciated by the plaintiff, whether the risk was obvious to a person exercising reasonable perception, intelligence, and judgment, and whether there was some other reason for the defendant to foresee the harm, are all relevant considerations that provide more balance and insight to the analysis than merely labeling a particular risk "open and obvious." In sum, the analysis recognizes that a risk of harm may be foreseeable and unreasonable, thereby imposing a duty on a defendant, despite its potentially open and obvious nature.

Accordingly, while we restrict the once broad application of the "open and obvious" doctrine, we stress that duty remains a separate component of a plaintiff's negligence action. As we said in Blair v. Campbell, 924 S.W.2d 75 (Tenn. 1996), "our adoption of the principles of comparative fault did not alter the analysis applicable to the common law concept of duty . . . and it is beyond dispute that duty is a question of law for the trial court's determination." Thus, only after a duty is established does comparative fault come into play.

We believe our analysis is consistent with other post-McIntyre cases. In Perez v. McConkey, supra, we addressed the effect of comparative fault on the assumption of risk doctrine which, like contributory negligence, had traditionally barred a plaintiff's recovery. After discussing the several distinct types of assumed risks, e.g., express or implied, we held that a plaintiff's primary implied assumption of risk, in which a plaintiff assumes a known risk that is inherent in a particular activity, such as watching a baseball game from an unscreened seat, should continue to be analyzed in terms of duty. Conversely, secondary implied assumption of risk, in which a plaintiff unreasonably or

-14-

reasonably confronts a known risk, should be considered under comparative

negligence principles:

> [T]he reasonableness of a party's conduct in
> confronting a risk should be determined under the
> principles of comparative fault. Attention should be
> focused on whether a reasonably prudent person in
> the exercise of due care knew of the risk, or should
> have known of it, and thereafter confronted the risk;
> and whether such a person would have behaved in
> the manner in which the plaintiff acted in light of all
> the surrounding circumstances, including the
> confronted risk.

872 S.W.2d at 905.

We also think our analysis is consistent with Eaton v. McLain,

supra. There, a guest in the defendants' home awoke during the night and fell

while trying to descend a stairway in the dark. The jury allocated 40 percent of

the negligence to the guest and 60 percent to the homeowners. Although we

cited the traditional rule that the defendant has no duty to warn against a danger

that is open and obvious, we did so in the context of the specific facts of that

case. Our analysis of the duty issue under the facts of the case was consistent

with the above principles:

> As indicated in [Doe v. Linder, supra,] the question of
> whether the [defendants'] general duty of care
> encompasses the duty to guard against the acts set
> forth in the complaint involves an analysis of the
> foreseeability of the risk to which [the plaintiff] was
> exposed. In other words, the issue is whether [the
> plaintiff] has made 'any showing from which it can be
> said that the *defendants reasonably knew or should
> have known of the probability of an occurrence such
> as the one which caused [her] injuries.'* Id.

Eaton, 891 S.W.2d at 594 (italics in original). Although we concluded that, under

the specific facts of the Eaton case, no duty should be imposed, our holding

recognized that the result could easily have been different and a duty could have

been imposed:

> In order for the [defendants] to be charged with the duty to leave on the light in the hall and to lock the basement door, they must have been able to reasonably foresee that [the plaintiff] would get out of bed in total darkness, walk across the hall, and step into the basement stairwell, all without turning on any lighting whatsoever. While our holding would likely be different if no lighting had been provided or if it had been inoperative, [the plaintiff's] failure to turn on any lights, coupled with her willingness to open the door and step into an unfamiliar area is such a radical departure from reasonable conduct under the circumstances that the [defendants] could not have reasonably foreseen that conduct and its consequences.

Id. at 594. Accordingly, although we cited the "open and obvious" rule, we did not label the dark stairwell an open and obvious danger and then hold that no duty should be imposed; instead, the duty question was analyzed with respect to the traditional components of foreseeability and risk of harm as applied to the facts of the case. Id. at 594.

To summarize, we join those jurisdictions that have limited the open and obvious doctrine in favor of the Restatement approach. That a danger to the plaintiff was "open or obvious" does not, ipso facto, relieve a defendant of a duty of care. Instead, the duty issue must be analyzed with regard to foreseeability and gravity of harm, and the feasibility and availability of alternative conduct that would have prevented the harm. The factors provided in the Restatement (Second) of Torts, § 343(A) relate directly to the foreseeability question; in short, if the foreseeability and gravity of harm posed from a defendant's conduct, even if "open and obvious," outweighed the burden on the defendant to engage in alternative conduct to avoid the harm, there is a duty to act with reasonable care. The circumstances of the case are then analyzed under comparative fault.

We reject the defendants' contentions that restriction of the open and obvious danger rule will preclude the trial court from applying mechanisms

such as summary judgment and directed verdict to evaluate cases. By retaining the separate analysis of duty, and not totally subsuming all cases by applying comparative fault, the mechanisms of summary judgment and directed verdict remain viable to evaluate cases at preliminary stages in the proceedings. A summary judgment remains appropriate, for example, where the plaintiff has not produced sufficient evidence to meet the "duty" component, or any other component of a negligence claim, as a matter of law. Byrd v. Hall, 847 S.W.2d 208 (Tenn. 1993). A directed verdict, on the other hand, remains appropriate if the court evaluates the evidence in a light most favorable to the plaintiff and determines that reasonable minds could not differ in finding that the fault of the plaintiff was equal to or greater than the fault of the defendant. Eaton, 891 S.W.2d at 590.

## APPLICATION

### Coln v. City of Savannah

Although the trial court did not apply a separate analysis of the duty requirement, it implicitly found that the defendant, City of Savannah, owed a duty of reasonable care to the plaintiff, and it applied comparative fault principles in assessing 70 percent of the negligence to the City and 30 percent of the negligence to the plaintiff. In reversing the judgment, the Court of Appeals also applied comparative fault analysis, but found that the plaintiff was at least 50 percent negligent, barring recovery.

Our review of the trial court's determination of duty, a question of law, is de novo. Our review of the trial court's findings of fact, on the other hand, is "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d).

-17-

We find that the City owed a duty of care under the facts of this case. The deviation between the surface of the brick pavers and concrete sidewalk created a foreseeable probability of harm. Although the deviation was open and noticeable to a degree, it is significant that the deviation was in an area that had to be navigated in order to gain access to the City Hall building. It is also significant that the City had actual knowledge of the deviation when the pavers were installed and was aware of the availability of corrective action.[11] Despite such knowledge and the foreseeable risk of harm to persons who entered the City Hall building, the City took no steps to remove or warn against the danger. In our view, the risk of harm was unreasonable despite its open and obvious nature and the foreseeability and gravity of harm, therefore, outweighed the burden imposed in protecting against that harm. See McCall v. Wilder, 913 S.W.2d at 153.

Having found a duty existed under the facts of this case, we think that the trial court correctly analyzed the conduct of the plaintiff and City under comparative fault principles. In Eaton we said that relevant factors for consideration include but are not limited to: (1) the relative closeness of the causal relationship between the conduct of the defendant and the injury to the plaintiff; (2) the reasonableness of the party's conduct in confronting a risk, such as whether the party knew of the risk, or should have known of it; (3) the extent to which the defendant failed to reasonably utilize an existing opportunity to avoid the injury to the plaintiff; (4) the existence of a sudden emergency requiring a hasty decision; (5) the significance of what the party was attempting to accomplish by the conduct, such as to save another's life; and (6) the party's particular capacities, such as age, maturity, training, education, and so forth. 891 S.W.2d at 892.

---

[11] We believe these facts distinguish this case from the pre-McIntyre cases cited by the defendant for the proposition that a city or municipality has no duty or liability to ensure against injuries from cracks or imperfections in sidewalks. See, e.g., City of Knoxville v. Hood, 97 S.W.2d 446 (Tenn. App. 1936).

A trial court acting as trier of fact "has considerable latitude in allocating percentages of fault to negligent parties . . . [and] appellate courts may alter these findings if they are clearly erroneous." Wright v. City of Knoxville, 898 S.W.2d 177, 181 (Tenn. 1995). After evaluating the evidence, the trial court assessed the negligence as 30 percent to the plaintiff and 70 percent to the City. In our view, given the evidence in the record, and the presumption of correctness afforded, the trial court's findings were not clearly erroneous. The Court of Appeals therefore erred in reversing the judgment.

Although not addressed by the Court of Appeals, the City maintains its reliance on immunity under the Governmental Tort Liability Act:

> Except as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary.

Tenn. Code Ann. § 29-20-201(a)(Supp. 1997). As noted by the trial court, such immunity may be removed under certain circumstances, including "any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and operated by such governmental entity." Tenn. Code Ann. § 29-20-203(a)(Supp. 1997). Removal of immunity under this section, however, requires that "constructive and/or actual notice to the governmental entity of such condition be alleged and proved. . . ." Tenn. Code Ann. § 29-20-203(b)(Supp. 1997).

The question of whether a particular site is defective, unsafe, or dangerous for the purpose of removing governmental immunity is a question of fact. Helton v. Knox County, Tennessee, 922 S.W.2d 877 (Tenn. 1996). The trial court found:

> The threshold issue in this case is the question of notice or the absence of notice and this Court finds that the Defendant City through its relationship with William Gilchrist created a defective, unsafe and dangerous condition. They surprisingly knew of it in its inception, but accepted it and made no attempt to correct it. . . . [T]he City then allowed this condition to exist in an ever worsening position or condition as it settled for a period of at least three months depending upon the precise date when this portion of the project was completed and perhaps a period of as much as four months or in excess of four months. That is sufficient to avoid that notice that's required under Tenn. Code Ann. 29-20-203[b]. They created and maintained the defective, unsafe and dangerous condition and [] this condition was the proximate cause of the injuries suffered. . . .

The evidence in this record, reviewed with the presumption of correctness, supports the trial court's finding that the sidewalk was defective, unsafe or dangerous, as well as the finding that the City had actual notice of the condition. Tenn. R. App. P. 13(d). Moreover, because we have held that comparative fault applies to conduct that is broader than negligence, such as strict liability in tort, see, e.g., Whitehead v. Toyota Motor Corp., 897 S.W.2d 684 (Tenn. 1995), we observe that the trial court's application of comparative fault principles under Tenn. Code Ann. § 29-20-203 was entirely consistent with McIntyre v. Balentine, supra. See Bradford v. City of Clarksville, 885 S.W.2d 78 (Tenn. App. 1994).

### Vancleave v. Markowski

Although neither the trial court nor the Court of Appeals indicated that it was considering the "duty" element, each implicitly found no duty when it found that the opening in the homeowners' swimming pool deck was open and obvious and granted summary judgment to the homeowners as a matter of law.

Summary judgment is appropriate only if the moving party shows that no genuine and material factual issue exists and he or she is entitled to relief

as a matter of law. In ruling on such a motion, the court must consider the evidence in a light most favorable to the non-moving party and must allow all reasonable inferences in his or her favor. A summary judgment may be appropriate, therefore, "when there is no dispute over the evidence establishing the facts that control the application of a rule of law." Byrd v. Hall, 847 S.W.2d at 214-215; Tenn. R. Civ. P. 56.

Although summary judgment is a proper mechanism with which to evaluate the "duty" component of a negligence claim, we conclude that the lower courts erred in their rulings in this case. When reviewed with the applicable standards, the evidence shows that the homeowners removed the skimmer from their pool deck thereby creating a large and dangerous opening in the deck which they did not elect to otherwise cover. The homeowner invited the plaintiff onto the deck, where they walked in close proximity while talking and looking into the yard. Although the plaintiff had not previously visited the homeowners, she was not warned about the opening in the deck. There was a factual issue as to the proximity and exact distance between the plaintiff and homeowner, their actions just before the plaintiff fell into the opening, and the existence of conduct that may have distracted the plaintiff.

In our view, the plaintiff presented sufficient evidence on the issue of whether the risk of harm was unreasonable despite its open and obvious nature and whether the foreseeability and gravity of the harm outweighed the burden imposed in protection against that harm to establish a duty on the part of the homeowner. Accordingly, the lower courts erred in granting summary judgment to the homeowners. While we express no view on the relative fault of the parties, the plaintiff was entitled to proceed with her case.

**CONCLUSION**

-21-

We conclude that an open and obvious danger that causes an injury to a plaintiff does not automatically result in a finding of no duty and no landowner liability. As in any negligence action, a risk is unreasonable and gives rise to a duty if the foreseeability and gravity of harm posed by a defendant's conduct, even if open and obvious, outweigh the burden upon the defendant to engage in conduct that would have prevented the harm.

Applying this rule, we reverse the judgment of the Court of Appeals in <u>Coln v. City of Savannah</u>, and reinstate the judgment of the trial court. We also reverse the judgment of the Court of Appeals in <u>Vancleave v. Markowski</u> and remand the case to the trial court for further proceedings consistent with this opinion. Costs of the appeals in each case shall be paid by the defendants.

_____
RILEY ANDERSON, CHIEF JUSTICE

**CONCUR:**

Drowota, Reid and Birch, JJ.
Holder, J. - see separate concurring opinion

IN THE SUPREME COURT OF TENNESSEE
AT JACKSON

FILED

March 30, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

HAZEL MAXINE COLN and      )
husband, CARL F. COLN,      )
                            )      HARDIN LAW
        Appellants,         )
                            )
                            )
V.                          )      HON. JULIAN P. GUINN, JUDGE
                            )
                            )
CITY OF SAVANNAH, TENNESSEE, )
                            )      No. 02-S-01-9702-CV-00008
        Appellee.           )

and

DEBBIE VANCLEAVE,           )
                            )      MADISON LAW
        Appellant,          )
                            )
                            )
V.                          )      HON. WHIT LAFON, JUDGE
                            )
                            )
MATTHEW MARKOWSKI and        )
wife, DIANE MARKOWSKI,       )
                            )      No. 02-S-01-9704-CV-00026
        Appellees.          )

**CONCURRING OPINION**

Although I concur in the results, I write separately because of my

disagreement with this Court's expansive use of the term "duty." This Court has

properly, in my opinion, used a duty analysis to determine that class of people to

whom reasonable care must be exercised. See, e.g., Bradshaw v. Daniel, 854

S.W.2d 865 (Tenn. 1993). In my opinion, however, this Court has also

improperly used a duty analysis to determine whether a party has failed to use

reasonable care. See, e.g., Eaton v. McCLain, 891 S.W.2d 587 (Tenn. 1994).

One commentator has stated that the question of whether there is a duty has most often seemed helpful in cases where the only real issue is whether the defendant stands "in any such relation to the plaintiff as to create any legally recognized obligation of conduct for the plaintiff's benefit." W. Page Keeton, Prosser & Keeton on the Law of Torts, § 42 at 274 (5th ed. 1984). In courts that use "duty" to limit legal redress where causation is clear and direct, the ordinary usage of "duty:"

> has been to confine the word "duty" to questions of the existence of some relation between the defendant and the plaintiff which gives rise to the obligation of conduct in the first instance, and to deal with the connection between that obligation, once it has arisen, and the consequences which have followed in the language of "proximate cause."

Id. at 275.

This Court, however, has followed the lead of jurisdictions that have expanded the use of a duty analysis in premises liability cases. The majority states:

> The analysis, therefore, as in any negligence case, is first upon duty in accordance with the foreseeability and gravity of harm, and the feasibility and availability of alternatives; if a duty is imposed, then the surrounding circumstances are analyzed under the principles of comparative fault.

-25-

I have no quarrel with an examination of foreseeability and the gravity of harm to determine whether a duty exists. Where I begin to differ with the majority is in the examination of the following factors as part of the analysis of duty: whether the danger was known and appreciated by the plaintiff; whether the risk was obvious to a person exercising reasonable perception, intelligence, and judgment; and whether there was some other reason for the defendant to foresee the harm. These factors are more properly considered by the trier of fact in determining whether a duty has been breached.

The existence of a duty should not be confused with a breach of that duty. See Shaw v. Petersen, 821 P.2d 220, 222 (Ariz. App. 1991) (holding that whether a hazard is open and obvious is not relevant to determine the existence of duty, rather it is relevant to determining if the duty was breached). I would permit a jury to decide if a risk is unreasonable. Klopp v. Wackenhut Corp., 824 P.2d 293, 298 (N.M. 1992) (holding that it is for the jury to decide in virtually every case whether a dangerous condition on the premises involved an unreasonable risk of danger and whether the occupier should reasonably anticipate that the visitor will not discover or realize the "obvious" danger).

Unlike the majority of this Court, I would find that the doctrine of "open and obvious" has been subsumed into the comparative fault scheme. Once a duty is found to exist as to the class of persons to which the plaintiff belongs, the obviousness of the danger and the plaintiff's confrontation of that danger would be but two additional factors for the jury to consider in determining the parties' percentages of fault. Only if reasonable minds could not differ should a motion for summary judgment or directed verdict be granted. See

<u>Hertelendy v. Agway Ins. Co.</u>, 501 N.W.2d 903, 908 (Wis. App. 1993) (holding that the application of open and obvious danger doctrine amounts to a determination that the plaintiff's negligence in confronting an open and obvious danger exceeds the defendant's negligence as a matter of law).

Approaching the open and obvious rule by analyzing the reasonableness of a party's actions is consistent with the history of the open and obvious rule in Tennessee. In the early history of "open and obvious," precluding recovery required analyzing the reasonableness of the actions of the plaintiff in confronting a risk or danger. The earlier cases focused on the plaintiff's prior knowledge of the danger. See <u>Baker v. Louisville & N. Terminal Co.</u>, 106 Tenn. 490, 61 S.W. 1029, 1031 (1901) ("This was a danger that was open and obvious to plaintiff the moment he climbed upon the car, and, having assumed the risk of icing the car under such conditions, he cannot be heard now to complain"); <u>Illinois Central R.R. Co. v. Nichols</u>, 173 Tenn. 602, 118 S.W.2d 213, 218 (1938) ("And, hence, there is no liability from dangers that *are obvious, or as well known to the person injured as to the owner*") (emphasis in original); <u>Park v. Sinclair Refining Co.</u>, 142 S.W.2d 321, 324-25 (Tenn. Ct. App. 1940) (holding no liability is established "when it appears that the injured person's knowledge of the danger surpassed or equaled that of the defendant").

In these cases, I would find the defendants owed a duty to their respective plaintiffs. Once it has been determined that the plaintiffs fall within the foreseeable class of persons, I would require the evaluation of the danger, the reasonableness of the defendants' actions and the reasonableness of the plaintiffs' actions in confronting the danger to be decided by the trier of fact in

-27-

comparing the fault of the parties. The relevant inquiry is the conduct of each of the parties and whether that conduct falls below the standard of care so as to breach the duty owed.

_____
Janice M. Holder, Justice