IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
AUGUST 30, 2001 Session

## TERRY LITTLEJOHN v. BOARD OF PUBLIC UTILITIES OF PARIS, TENNESSEE

Direct Appeal from the Circuit Court for Henry County
No. 1475; The Honorable C. Creed McGinley, Judge

No. W2001-00011-COA-R3-CV - Filed January 2, 2002

This appeal arises from the personal injuries sustained by the Appellant as a result of an electrical shock he received while roofing a house in Henry County, Tennessee. The Appellant filed a complaint against the Appellee under the Governmental Tort Liability Act in the Circuit Court of Henry County. Following a bench trial, the trial court assessed thirty-five percent of the fault to the Appellant and sixty-five percent of the fault to the Appellee. The trial court found that the total amount of damages sustained by the Appellant was $25,000.00. The trial court reduced the total amount of damages by thirty-five percent which resulted in an award of damages to the Appellant in the amount of $16,250.00.

The Appellant appeals the decision of the Circuit Court of Henry County assessing thirty-five percent of the fault to the Appellant and awarding damages in the amount of $16,250.00. For the reasons stated herein, we affirm in part and reverse in part the trial court's decision.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Edward Robertson, Clarksville, TN, for Appellant

Fred N. McLean, Paris, TN, for Appellee

**OPINION**

**I. Facts and Procedural History**

The Appellant, Terry Littlejohn ("Mr. Littlejohn"), was thirty-four years old and self-employed in the home improvement business at the time of the accident which is the subject of this litigation. On November 23 and 24, 1998, Mr. Littlejohn, Paul Olson ("Mr. Olson"), and other workers were roofing a house in Henry County, Tennessee. Electricity to the area was supplied by the Appellee, Board of Public Utilities of Paris, Tennessee ("the Board"). The Board owned a 7200-volt uninsulated power line that hung over the roof of the house at a height of three feet above the highest point of the roof. The height of the power line was in violation of the National Standard Electrical Safety Code which required that a power line carrying that high of voltage be ten feet above the highest point of a roof.[1]

While roofing the house on November 24, 1998, Mr. Littlejohn's head came in contact with the power line. Mr. Littlejohn lost consciousness, rolled off the roof, and landed on the ground. Mr. Littlejohn was treated at Henry County Medical Center by Dr. Terry Harrison ("Dr. Harrison"). Dr. Harrison treated Mr. Littlejohn for electrical burns on his head, face, and upper body. Dr. Harrison performed a cervical spine x-ray, a cervical spine CT, a brain CT, an abdomen CT, and a chest x-ray on Mr. Littlejohn. Dr. Harrison found no indication of any neurological problems or abnormalities with Mr. Littlejohn. Mr. Littlejohn was discharged from Henry County Medical Center on November 26, 1998.

Dr. Harrison saw Mr. Littlejohn on December 3, 1998 and December 10, 1998 for follow-up visits. Dr. Harrison again found no indication of any neurological problems or abnormalities with Mr. Littlejohn. Mr. Littlejohn complained of weakness, being disoriented, an inability to use his muscles, and pain in his back. Dr. Harrison referred Mr. Littlejohn to a neurologist, Dr. Terri Edwards-Lee ("Dr. Edwards-Lee"). Dr. Edwards-Lee performed a neurological examination on Mr. Littlejohn. Dr. Edwards-Lee found no indication of any neurological problems or spinal cord lesions related to the accident.

On November 22, 1999, Mr. Littlejohn and his girlfriend, Beverly Houser ("Ms. Houser"), filed a complaint in the Circuit Court of Henry County against the Board and Henry County. The complaint alleged a cause of action under the Governmental Tort Liability Act pursuant to section 29-20-101 et seq. of the Tennessee Code for damages sustained when Mr. Littlejohn's head came in contact with the power line. The complaint also alleged a cause of action for loss of consortium on behalf of Ms. Houser. On November 23, 1999, Mr. Littlejohn and Ms. Houser amended their complaint to join the City of Paris as an additional defendant. On December 29, 1999, the Board and Henry County filed an answer to the complaint and the amended complaint. On December 30,

---

[1] In 1974, the Tennessee Legislature adopted the National Standard Electrical Safety Code pursuant to section 68-101-104 of the Tennessee Code.

1999, the trial court entered an order dismissing the complaint with prejudice as to Henry County. On January 25, 2000, the parties entered a consent order dismissing the City of Paris as a defendant. On October 5, 2000, the Board filed a motion to amend the answer to the complaint and the amended complaint. On October 31, 2000, the trial court entered an order allowing the Board to file an amended answer.

In June, 2000, Dr. Blaise Ferraraccio ("Dr. Ferraraccio"), a neurologist, performed a neurological examination on Mr. Littlejohn. Dr. Ferraraccio reviewed Mr. Littlejohn's CT scan, MRI scans, and electromyography test and concluded that the scans were normal for a man of his age. Dr. Ferraraccio found that Mr. Littlejohn had a normal Rhomberg test for balance. Dr. Ferraraccio found that Mr. Littlejohn had normal deep tendon reflexes in his arms and at his knees but had diminished reflexes at his ankles. Dr. Ferraraccio also found that Mr. Littlejohn had no muscle atrophy, full range of motion in his head and neck, no cerebellar ataxia, and no loss of grip strength. Dr. Ferraraccio ran a somatosensory evoked potential test on Mr. Littlejohn which showed that electrical signals took 3.5 milliseconds longer to travel up one particular segment of his spinal cord than was considered normal. Dr. Ferraraccio found that the somatosensory evoked potential test indicated a permanent problem in Mr. Littlejohn's spinal cord. Dr. Ferraraccio found that as a result, Mr. Littlejohn had loss of sensation in his hands and feet which caused him to have trouble with fine motor activities and to be unstable when he walks. Dr. Ferraraccio concluded that Mr. Littlejohn had a twenty-eight percent permanent partial impairment to his body as a result of the accident.

On November 2, 2000, the trial court conducted a bench trial. At the outset of the trial, the trial court dismissed Ms. Houser's loss of consortium claim on the grounds that Mr. Littlejohn and Ms. Houser were not married. Mr. Olson testified that he did not realize the power line was there. Mr. Olson testified that he did not notice the power line until after the accident. He stated that the power line was three feet above the roof. He said that he never would have thought that a line hung that low would be "that hot of a wire." Mr. Olson testified that he did not know how he did not touch the wires while working on the roof. He stated that they had been working on the roof for two days on the day of the accident.

Mr. Littlejohn testified that he did not recall anything about the accident. He said that on prior jobs, he was conscious about the location of power lines and always tried to pay attention. Mr. Littlejohn testified that he was in excellent health prior to the accident. He stated that following the accident, he suffers from headaches three or four times per week and suffers from a sore back. Mr. Littlejohn also testified that his hands and feet are numb which causes him to have trouble walking and holding hammers and nails. He said that he missed work for a period of time following the accident.

After the proof was presented at the trial, the trial court found that Mr. Littlejohn was thirty-five percent at fault and the Board was sixty-five percent at fault. The trial court found that the total amount of damages sustained by Mr. Littlejohn was $25,000.00. The trial court reduced the total amount of damages by thirty-five percent which resulted in an award of damages to Mr. Littlejohn

in the amount of $16,250.00. On December 18, 2000, the trial court entered a judgment order of its findings at the trial. This appeal followed.

## II. Standard of Review

The standard of review for a non-jury case is *de novo* upon the record. See Wright v. City of Knoxville, 898 S.W.2d 177, 181 (Tenn. 1995). There is a presumption of correctness as to the trial court's factual findings, unless the preponderance of the evidence is otherwise. See TENN. R. APP. P. 13(d). For issues of law, the standard of review is *de novo*, with no presumption of correctness. See Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79, 80 (Tenn. 1996).

## III. Law and Analysis

The following two issues, as we perceive them, are presented for our review:

1. Whether the trial court erred by setting the total amount of damages sustained by Mr. Littlejohn at $25,000.00; and
2. Whether the trial court erred by allocating thirty-five percent of the fault to Mr. Littlejohn.

We will examine each issue in turn.

The first issue presented for our review is whether the trial court erred by setting the total amount of damages sustained by Mr. Littlejohn at $25,000.00. The plaintiff carries the burden at trial to prove by a preponderance of the evidence the amount of his or her damages. See Walker v. Sidney Gilreath & Assoc., 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000). The proof of damages need not be exact or mathematically precise. See Airline Constr., Inc. v. Barr, 807 S.W.2d 247, 273 (Tenn. Ct. App. 1990) (citing Provident Life and Accident Ins. Co. v. Global Indem. Co., 3 S.W.2d 1057, 1058 (Tenn. 1928); Cummins v. Brodie, 667 S.W.2d 759, 765 (Tenn. Ct. App. 1983)). Rather, the plaintiff must prove damages with a reasonable degree of certainty which enables the trier of fact to make a reasonable assessment of the damages. See Overstreet v. Shoney's, Inc., 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999); Airlines Constr., Inc., 807 S.W.2d at 273. The trier of fact may not base an award of damages on "mere conjecture or speculation." Western Sizzlin, Inc. v. Harris, 741 S.W.2d 334, 335 (Tenn. Ct. App. 1987).

Damages in personal injury actions "are not measured by fixed rules of law, but rest largely in the discretion of the trier of fact and [are] entitled to great weight in the appellate courts in the absence of a showing of fraud or corruption." Coakley v. Daniels, 840 S.W.2d 367, 372 (Tenn. Ct. App. 1992) (citing Blalock v. Temple, 276 S.W.2d 493, 494 (Tenn. Ct. App. 1954)). The appellate court will not reverse the trial court unless there is a finding that the award of damages shows prejudice or is so grossly inadequate as to shock the conscience of the court. See Karas v. Thorne, 531 S.W.2d 315, 317 (Tenn. Ct. App. 1975) (citations omitted).

In the case at bar, the trial court found that Mr. Littlejohn established his reasonable and necessary medical expenses in the amount of $6,100.00. The trial court also noted that Mr. Littlejohn had substantial pain and suffering. The trial court observed, however, that there had been no proof regarding lost wages or future medical expenses, and the trial court refused to speculate on these amounts. The trial court found that the total amount of damages sustained by Mr. Littlejohn for medical expenses and pain and suffering was $25,000.00. We do not find that the trial judge's award of damages in the amount of $25,000.00 to be so grossly inadequate as to shock the conscience of this Court. The trial court had the opportunity to weigh the credibility of the witnesses and the evidence and made a sound determination. We find that the trial court did not err by setting the total amount of damages sustained by Mr. Littlejohn at $25,000.00. Accordingly, we affirm the trial court's decision awarding $25,000.00 as the total amount of damages to Mr. Littlejohn.

The second issue presented for our review is whether the trial court erred by allocating thirty-five percent of the fault to Mr. Littlejohn. Tennessee adopted the doctrine of comparative negligence in <u>McIntyre v. Ballentine</u>, 833 S.W.2d 52, 56 (Tenn. 1992). Under the doctrine of comparative negligence, courts compare the fault of the defendant tortfeasor to the fault of the plaintiff. If the plaintiff's fault is less than the defendant's fault, the plaintiff may recover damages which are reduced in proportion to the percentage of the total fault allocated to him. <u>See id.</u> at 57. If the plaintiff's fault is equal to or greater than the defendant's fault, however, the plaintiff may not recover damages. <u>See id.</u> In <u>Coln v. City of Savannah</u>, 966 S.W.2d 34 (Tenn. 1998), the open and obvious doctrine was absorbed into comparative negligence. <u>See id.</u> at 43. The supreme court stated:

> That a danger to the plaintiff was "open or obvious" does not, *ipso facto*, relieve a defendant of a duty of care. Instead, the duty issue must be analyzed with regard to foreseeability and gravity of harm, and the feasibility and availability of alternative conduct that would have prevented the harm. The factors provided in the Restatement (Second) of Torts, § 343A, relate directly to the foreseeability question; in short, if the foreseeability and gravity of harm posed from a defendant's conduct, even if "open and obvious," outweighed the burden on the defendant to engage in alternative conduct to avoid the harm, there is a duty to act with reasonable care. The circumstances of the case are then analyzed under comparative fault.

<u>Id.</u>

In the case at bar, the trial court found that thirty-five percent of the fault should be allocated to Mr. Littlejohn for his failure to recognize his environment and the dangerous conditions. The trial court stated that

> it goes without speaking that anyone that is up on a roof in the nature of high powered wires certainly should observe and be

-5-

aware of the existence of these wires, to stay away from these wires. And I would think that someone that was engaged in the roofing industry would be even more aware of the hazards that coming into contact with any type of voltage, let alone a . . . seventy-two hundred volt wire. And as a result, people are charged with seeing what they could see, being aware of what's around them, and particularly any type of hazardous conditions.

This Court agrees that Mr. Littlejohn should be allocated a portion of the fault for failing to recognize his environment under the open and obvious doctrine. Having reviewed the record and applied the relevant standard of review, however, we find that the trial court erred by allocating thirty-five percent of the fault to Mr. Littlejohn. We find that twenty-five percent of the fault should be allocated to Mr. Littlejohn and seventy-five percent to the Board. The judgment in favor of Mr. Littlejohn should be increased to reflect the appropriate allocation of fault. Thus, Mr. Littlejohn should be awarded damages in the amount of $18,750.00 (seventy-five percent of $25,000.00). Accordingly, we reverse the trial court's decision allocating thirty-five percent of the fault to Mr. Littlejohn and remand for entry of a judgment in accordance with this opinion.

## IV. Conclusion

For the foregoing reasons, the decision of the trial court is affirmed in part and reversed in part. We remand this case to the trial court for entry of a judgment in accordance with this opinion. Costs of this appeal are taxed equally against the Appellant, Terry Littlejohn, and his surety, and the Appellee, Board of Public Utilities of Paris, Tennessee, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE