IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 2, 2020

## SHIRLEY LUNSFORD v. K-VA-T FOOD STORES, INC.

Appeal from the Circuit Court for Knox County
No. 3-29-17   Deborah C. Stevens, Judge

_____

### No. E2019-01272-COA-R3-CV

_____

This appeal involves a slip and fall premises liability case filed by an invitee against a business proprietor.  The trial court granted summary judgment to the business proprietor because invitee's evidence did not show that the condition in the business proprietor's store was inherently dangerous and because the court found the condition to be open and obvious.  For the following reasons, we agree with the trial court that the condition at issue was not inherently dangerous and summary judgement should be granted for Defendant.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded.**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and FRANK G. CLEMENT, JR., P.J., M.S., joined.

Michael C. Inman, Knoxville, Tennessee, for the appellant, Shirley Lunsford.

J. Eric Harrison and Jeffrey M. Cranford, Morristown, Tennessee, for the appellee, K-VA-T Food Stores, Inc..

### OPINION

### I.    FACTS & PROCEDURAL HISTORY

Plaintiff Shirley Lunsford filed this lawsuit against Defendant K-VA-T Food Stores, Inc. ("Food City"), a foreign corporation that has its principal office in Abingdon, Virginia, doing regular business in Tennessee.  Plaintiff alleges premises liability as a

result of "a trip and fall" while exiting the pharmacy of one of Defendant's Food City grocery stores in Knoxville, Tennessee. Plaintiff claims she suffered severe physical pain, mental anguish, and financial harm as a result of her trip and fall, including medical expenses, loss of enjoyment of life, and expenses for necessary personal care related to the fall. After Defendant's answer and initial discovery, Defendant filed a motion for summary judgment on January 15, 2019, arguing its employees were not negligent in maintaining its store on the day Plaintiff was injured and that the "weight scale" on which Plaintiff tripped was open and obvious to the public and not inherently dangerous. In support of its motion for summary judgment, Defendant submitted a statement of undisputed facts and a memorandum of law, along with excerpts from the depositions of Plaintiff; John Hodge, Jr., Assistant Manager of the Food City store where Plaintiff fell; and Archie Skeens, Director of Safety and Compliance for Defendant.

The events giving rise to this case occurred on October 18, 2016, at Defendant's store located at 7202 Maynardville Pike in Knoxville, Tennessee. On that date, Plaintiff entered Defendant's store to retrieve a prescription from the store pharmacy. Plaintiff had shopped at this location for several years, picking up medications from the pharmacy as often as twice per month. Upon entering the store on October 18, 2016, Plaintiff walked directly to the pharmacy area. In approaching the pharmacy window, Plaintiff walked by the scale without issue. In approaching and walking past the scale, there was nothing obstructing Plaintiff's view of the scale, and there is no evidence to show there were any displays, lights, or other distractions that detracted Plaintiff's attention from the scale. When Plaintiff initially walked past the scale, she did not trip over or contact the scale in any way. Admitting to the above-mentioned facts, Plaintiff asserts she simply did not notice the scale when she approached the pharmacy window. After completing her business at the pharmacy window, Plaintiff began to exit the store via the same route she entered, past the weight scale. Although Plaintiff's route was not the only path of ingress and egress between the entrance of the store and the pharmacy window, it was the shortest. In passing the scale while exiting the store, Plaintiff's foot contacted the base of the scale, causing her to trip and fall.

Plaintiff responded to Defendant's motion for summary judgment on March 15, 2019. The scale's appearance, suitability of its location, and relation to the surrounding objects prior to and during Plaintiff's fall has been the subject of much debate between the parties. Of the physical attributes pertaining to the scale, the following are undisputed: the scale sat against the wall of the pharmacy with the base of the scale extended outward into the aisle; the main body of the scale is several feet in height; and the base of the scale is estimated to be approximately 3" in height and 12" by 14" in length and width. The floor tiles surrounding the scale were 12" by 12". The base of the scale had a diamond or triangular pattern on the top; whereas the surrounding floor tiles had no unique pattern. While the majority of the surrounding tiles were tan colored,

several other "randomly assorted" tiles were either red or yellow.[1] Plaintiff claims she did not notice the scale because the base blended in with the surrounding floor tiles of various primary colors as a result of the scale's similar size and color.

The following photograph is a still shot image from a video of the store prior to and during Plaintiff's fall. The image depicts Plaintiff standing at the pharmacy window just prior to her exiting the store. The image was included as Exhibit number 3 to Plaintiff's deposition:



Between Plaintiff initially walking past the scale and her fall, the scale did not move, remaining against the wall with the base extended outward. However, prior to the incident, employees of Defendant's store often removed the scale to clean and wax the floors, and when the scale was placed back in the pharmacy area it would occasionally be placed in a different location. It is not clear from the record how long the scale had been present in the store, but Mr. Hodge testified that it was present when he began his

---

[1] In Plaintiff's deposition, she agreed that the top of the scale was black and white, which did not match the surrounding squares, with a black border around the square base. After her deposition, though, Plaintiff recanted that testimony in an affidavit in support of her response to Defendant's Motion for Summary Judgment, stating her agreement to those descriptions was "inadvertent."

employment there in 2012 or 2013. Mr. Hodge further testified that no other customer or employee had tripped over the scale.

Mr. Skeens testified that other Food City stores had similar weight scales in their pharmacy areas, but some of those stores positioned the scales between other stationary objects rather than allowing the base to extend outward freely. Across from the scale at issue was a stationary display case of various items for sale. Plaintiff asserts that the total width of the aisle way was no more than 36 inches, but after the base of the scale (12" by 14") and the display case's overhang (12") are taken into account, the remaining aisleway was "significantly reduced." In his capacity as Director of Safety and Compliance, Mr. Skeens audited the stores biannually. He was not aware of any other incidents of customers tripping over scales in other stores owned by Defendant during his twelve years of employment.[2] In his audits of the store where Plaintiff tripped, Mr. Skeens did not note any problems with the placement of the scale at issue.

In defense of the motion for summary judgment, Plaintiff claimed that it was questionable as to whether the placement of the scale in this case created an open and obvious risk or whether there was a safer location. In part, Plaintiff based this assertion, on the common custom of other Food City stores that placed weight scales between stationary objects. Plaintiff also asserted that Defendant was put on notice of the potentially dangerous position of the scale by a store pharmacist informing management that she thought someone would get injured by tripping over it.

The circuit court held a hearing on the motion for summary judgment on March 29, 2019. At the conclusion of the hearing, the court rendered an oral ruling in favor of Defendant. The court found that nothing was inherently dangerous about the scale itself; that Plaintiff successfully negotiated through the aisle next to the scale prior to tripping; and that there was no evidence that Plaintiff was distracted from noticing the scale. Additionally, the court found the scale was "open and obvious," rather than a latent defect, and there was no evidence that anyone had previously tripped over the scale. As a result, the court found there was no material evidence in which a jury could conclude Defendant was at fault. The circuit court entered its written order granting Defendant's summary judgment motion on June 20, 2019. Plaintiff timely appealed.

## II.    ISSUE PRESENTED

Plaintiff's stated issues on appeal have been summarized as the following: whether the trial court erred in granting Defendant's motion for summary judgment based on the weight of the evidence, as reasonable minds could differ as to the material facts in dispute.

---

[2] The record indicates that Defendant owns approximately 130 other stores.

We disagree with Plaintiff's assertions, and for the following reasons, we affirm the decision of the trial court.

## III. STANDARD OF REVIEW

Appellate courts review a trial court's decision on a motion for summary judgment de novo with no presumption of correctness. *Kershaw v. Levy*, 583 S.W.3d 544, 547 (Tenn. 2019) (citing *Beard v. Branson*, 528 S.W.3d 487, 494–95 (Tenn. 2017)). On appeal, we must "make a fresh determination about whether the requirements of Rule 56 have been met." *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 887 (Tenn. 2019). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

A moving party who does not bear the burden of proof at trial can meet its burden of production "'either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense.'" *TWB Architects, Inc.*, 578 S.W.3d at 887 (quoting *Rye v. Women's Care Ctr. of Memphis*, 477 S.W.3d 235, 264 (Tenn. 2015)). Then, "'[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *Id.* at 889 (quoting *Rye*, 477 S.W.3d at 265). We accept the evidence presented by the nonmoving party as true, allow all reasonable inferences in its favor, and resolve any doubts about the existence of a genuine issue of material fact in its favor. *Id.* at 887.

## IV. DISCUSSION

In every negligence action, the plaintiff bears the burden of proof on five essential elements: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of the duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation." *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998) (citing *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993)). Additionally, premises liability cases present the "owner or occupier of [the] premises [with] a duty to exercise reasonable care" with regard to those legally on the premises. *Id.*[3] This duty places upon owners "the responsibility to remove or warn

---

[3] Whether the plaintiff is a licensee or invitee is no longer relevant in Tennessee. Rather than applying different duties of care to these separate classifications, the "duty of reasonable care shall extend to all persons who come upon the defendant's property with [the defendant's] consent, express or

against latent or hidden dangerous conditions on the premises of which one was aware or should have been aware." *Rice*, 979 S.W.2d at 308 (citing *Blair v. Campbell*, 924 S.W.2d 75, 76 (Tenn. 1996); *Eaton v. McLain*, 891 S.W.2d 587, 593–94 (Tenn. 1994)). *See also Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 350 (Tenn. 2014).

However, the duty owed by an owner or occupier is not absolute. *Steele v. Primehealth Med. Ctr., P.C.*, No. W2015-00056-COA-R3-CV, 2015 WL 9311846, at *9 (Tenn. Ct. App. Dec. 22, 2015). "Business proprietors are not insurers of their patrons' safety." *Blair v. W. Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004). *See also Parker*, 446 S.W.3d at 350; *Hunter v. Kroger Ltd. P'ship*, No. W2017-01789-COA-R3-CV, 2018 WL 5793562, at *3 (Tenn. Ct. App. Nov. 5, 2018). Meaning, there is no duty to warn of every aspect of the premises. *Steele*, 2015 WL 9311846, at *9 (citing *Norfleet v. Pulte Homes Tenn. Ltd. P'ship*, No. M2011-01362-COA-R3-CV, 2011 WL 5446068, at *5 (Tenn. Ct. App. Nov. 9, 2011)). "The duty imposed on the premises owner or occupier . . . does not include the responsibility to remove or warn against 'conditions from which no unreasonable risk was to be anticipated, or from those which the occupier neither knew about nor could have discovered with reasonable care.'" *Rice*, 979 S.W.2d at 309 (quoting W. Page Keeton, *Prosser & Keeton on Torts*, § 61 at 426 (5th ed. 1984)). As a result, the general duty of care owed only requires the removal of conditions which are actually dangerous and which are known or discoverable by the owner with reasonable care. *See, e.g.*, *Kroger*, 2018 WL 5793562, at *4; *Newcomb v. State*, No. M2014-00804-COA-R3-CV, 2015 WL 3956038, at *3 (Tenn. Ct. App. June 26, 2015). Without some evidence of the existence of a dangerous condition, there is no duty owed by the owner to warn or remove the condition. *Nee v. Big Creek Partners*, 106 S.W.3d 650, 653 (Tenn. Ct. App. 2002). *See also Kroger*, 2018 WL 5793562, at *4; *Cruce v. Memmex Inc.*, No. W2016-01167-COA-R3-CV, 2017 WL 497035, at *4 (Tenn. Ct. App. Feb. 7, 2017).[4]

implied." *Hudson v. Gaitan*, 675 S.W.2d 699, 703–04 (Tenn. 1984) *abrogated on other grounds by McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992).

[4] Plaintiff claims that the scale was not an "open and obvious" danger. The distinction between a "dangerous" condition and one that is "open and obvious" is an important, and often blended, legal nuance. Tennessee courts no longer ask whether a condition is "open and obvious" as a means of determining a defendant's duty. *See Coln v. City of Savannah*, 966 S.W.2d 34, 37, 43 (Tenn. 1998) (stating "an 'open and obvious' danger does not automatically result in a finding of no duty") *overruled on other grounds by Cross v. City of Memphis*, 20 S.W.3d 642 (Tenn. 2000). Instead, the "open and obvious" doctrine is now applied under comparative fault principles. *Coln*, 966 S.W.2d at 43. In doing so, a court must first determine whether a duty of care is owed due to the presence of a dangerous condition. If the court answers that query in the affirmative, it must then apply the principles of comparative fault to determine if the owner is relieved of liability. *Id.* at 42–43; *Green v. Roberts*, 398 S.W.3d 172, 177 (Tenn. Ct. App. 2012). Meaning, a duty may exist, and the owner may be liable, even if a condition is "open and obvious" so long as a dangerous condition is present. *See Rice*, 979 S.W.2d at 308. Additionally, comparative fault determinations are questions of fact to be determined by a jury, *see Elrod v. Continental Apartments*, No. M2007-01117-COA-R3-CV, 2008 WL 425947, at *2 (Tenn. Ct. App. Feb. 13, 2008) (citing *LaRue v. 1817 Lake, Inc.*, 966 S.W.2d 423, 427 (Tenn. Ct. App. 1997)), whereas the duty element in a negligence case, is a question of law to be decided by the court. *See Rice*, 979 S.W.2d at 308.

Plaintiff argues the position and location of the scale in the pharmacy created a dangerous condition that Defendant neither warned its patrons of nor removed. In doing so, Plaintiff asserts that Defendant's notice of the potential danger of the scale; the common occurrence in other Food City stores placing similar scales between stationary objects; and Defendant's own store safety policy, which states that an object of the scale's height could cause someone to trip, all lead to the conclusion that the scale was a dangerous condition. Therefore, Plaintiff claims that a duty to warn of or remove the scale was owed to her. The evidence, however, does not support this finding.

First, the evidence is insufficient to show that the store's management was actually on notice of the scale's potential to cause injury *prior to* Plaintiff's fall. Plaintiff testified that after her fall, a store pharmacist assisted her and remarked that "she had already told them once that somebody was going to get hurt on that." However, there is nothing in the record to clarify to whom the pharmacist made this remark, when it occurred, or where the scale was situated when the remark was made.[5] The only direct testimony on the issue came from Hodge, who stated it was not until *after* Plaintiff's fall that a store pharmacist told Hodge that she believed the scale's position would be an issue.

Additionally, Defendant was not aware of any other employee or customer of the store having tripped over the scale *prior to* Plaintiff. Without prior notice of potential future harm it cannot be said that it was foreseeable that either a customer or employee would one day trip over Defendant's scale, so a duty on such a basis cannot be assigned. *See Coln*, 966 S.W.2d at 43; *Rice*, 979 S.W.2d at 309 (stating "foreseeability is the test of negligence") (quoting *Doe v. Linder Constr. Co.*, 845 S.W.2d 173, 178 (Tenn. 1992)). Further, while other Food City stores may have placed a similar weight scale differently in their respective pharmacy sections, that alone does not point to the scale at issue being dangerously positioned in this store. No other accidents were known to have occurred previously to indicate the location was flawed. Additionally, Defendant's trained and certified Director of Safety and Management, Mr. Skeens, inspected the store biannually and did not find issue with the scale's location. Plaintiff did not present any expert testimony or other evidence that would tend to show the scale's location was inherently dangerous. Further, while Defendant's "Slip, Trip, and Fall" policy states, "As little as a three-eighth-inch rise in *the walkway* can cause a person to stumble," (emphasis added) and the parties agree the base of the scale was at least that high, the simple fact that an object is big enough to trip over does not *per se* make it a dangerous condition. *See, e.g.*, *Kroger*, 2018 WL 5793562, at *8 (tripping over a wooden pallet, not a dangerous

---

[5] Assuming *arguendo* there was sufficient evidence to show that the pharmacist's statements were made to Food City management, being on notice of the mere potential for injury is not enough; it must be foreseeable or likely that an injury will occur. *See, e.g.*, *Mooney v. Genuine Parts Co.*, No. W2015-02080-COA-R3-CV, 2016 WL 2859149, at *7–8 (Tenn. Ct. App. May 11, 2016) (stating the defendant's acknowledgement of the remote possibility of an injury is insufficient to show it was dangerous; instead, it must be "probable" that injury will occur).

condition); *Buck v. Accurate C & S Servs.*, No. E2017-00231-COA-R3-CV, 2017 WL 5135703, at \*6, (Tenn. Ct. App. Nov. 6, 2017) (tripping over a door frame, not a dangerous a condition).

In the present case, Plaintiff asserts the aisleway between the scale and a display case was too narrow and, therefore, violated Occupational Safety and Health Administration ("OSHA") requirements that an aisle be at least twenty-eight inches in width. In her brief, Plaintiff argues that "the violation of OSHA" allows reasonable minds to conclude that the scale not only created a trip hazard for store employees but also "invariably" created a hazard for customers.

However, Plaintiff failed to sufficiently develop this argument in the trial court or on appeal. To establish a "violation of OSHA," she attempted to piece together testimony from various witnesses. Mr. Skeens was asked the following during his deposition:

Q. . . . Is there a certain place where a scale is supposed to be placed pursuant to OSHA as well as fire protection codes that you may know of from your training?

A. No.

Q. Are you aware of -- is there a specific distance that a scale is supposed to be placed, or let me put it a better way, what is the width of an aisleway supposed to be?

A. According to OSHA, the minimum width is 28 inches.

. . . .

Q. Okay. What if there are items that are moved through that aisleway; does it change it? Such as buggies, equipment.

A. If it was a stationary object, yes, it would change it. But if it's a movable object, no.

Skeens testified that he had read the OSHA code "[m]any times." He did not see any problem with where the scale was located, and he did not believe that its location was unsafe. He also stated that "all OSHA's concerned with is egress, in case of an emergency."

Mr. Hodge was simply asked to estimate how much space was present for the "walking surface" at the location of the scale, and he replied, "You are looking at around

- 8 -

two to three feet." Inexplicably, no one provided any testimony as to the exact measurement of the area in question.

Combining the testimony of these two witnesses, Plaintiff claims that she sufficiently proved an "OSHA violation" that established a trip hazard not only for employees but also for customers. She did not cite any specific OSHA regulation before the trial court, nor did she cite any caselaw regarding whether an OSHA regulation could or should establish a standard that applies in cases involving non-employees such as customers. In fact, at the summary judgment hearing, when defense counsel attempted to cite specific OSHA regulations in an attempt to argue that they were not intended to protect store customers, Plaintiff's counsel objected to such argument:

MR. INMAN: Your Honor, I'm going to object to this, that nobody's actually testified to this. This is not something that's been presented in any discovery.

THE COURT: Well, I understand.

MR. HARRISON: It's a U.S. Code, Judge. It's self evident.

THE COURT: Yes. It was your response that said that one of the bases why summary judgment shouldn't be granted is because of the failure to comply with OSHA regulations.

Plaintiff's counsel stated, "[A]s to OSHA, we didn't argue or file as a negligence per se. That just demonstrates another example of Food City's negligence."

The trial court's summary judgment order never mentioned OSHA. On appeal, Plaintiff attempts to revive her "OSHA violation" argument without citing any caselaw or other legal authority regarding OSHA. We do not even know what specific section she claims was violated. As such, we deem this "OSHA violation" argument waived for failure to develop any more than a skeletal argument regarding the issue.

It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived.

*Sneed v. Bd. of Prof'l Responsibility of Supreme Court*, 301 S.W.3d 603, 615 (Tenn. 2010). *See also El-Moussa v. Holder,* 569 F.3d 250, 257 (6th Cir. 2009) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed

argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones.").

In contrast, Defendant relies on several analogous cases to support its claim that the scale was not a dangerous condition. In *Goumas v. Mayse*, No. 2013-01555-COA-R3-CV, 2014 WL 1713195 (Tenn. Ct. App. Apr. 29, 2014), the plaintiff was injured when he slipped on a rock while performing yard work at the home of his fiancée's parents. *Id.* at *1. Similar to Plaintiff having frequented the Food City store for several years, in *Goumas* the plaintiff had been to the home several times prior and was familiar with the landscape. *Id.* at *1, *8. In finding for the defendant, the court found "[t]here [was] simply no evidence of a dangerous or defective condition," stating the rock was "easily visible" and "in an area with no obstructions." *Id.* at *8.[6]

In both *Holland v. K-VA-T Food Stores, Inc.*, No. E2013-02798-COA-R3-CV, 2015 WL 151373 (Tenn. Ct. App. Jan. 13, 2015), and *Cagle v. Gaylord Entm't Co.*, No. M2002-00230-COA-R3-CV, 2002 WL 31728866 (Tenn. Ct. App. Dec. 5, 2002), the respective trial courts affirmed summary judgment in favor of the defendants after the plaintiffs tripped and fell over curbs in parking lots. *Holland*, 2015 WL 151373, at *1; *Cagle*, 2002 WL 31728866, at *1. In *Holland*, the plaintiff admitted she would not have tripped over the curb had she noticed it prior to falling. *Holland*, 2015 WL 151373, at *3. As in *Holland*, our Plaintiff admits there was nothing obstructing her view as she passed the scale. In *Cagle*, there was no proof a building code or standard was violated, and several other "visitors travers[ed the] parking lot on a daily basis." *Cagle*, 2002 WL 31728866, at *3. In light of those facts and in the absence of countervailing evidence presented by the plaintiff, the court found the curb was not a dangerous condition. *Id.* at *3–4.

In *Buck v. Accurate C & S Servs.*, 2017 WL 5135703, the plaintiff tripped over the bottom of a door frame as he entered the defendant's premises. *Id.* at *1. The frame was approximately 3/4" in height, and there was no proof of others previously falling through the doorway. *Id.* at *2, *5. In responding to the defendant's motion for summary judgment, the plaintiff not only declined to present his own evidence, but he also admitted to never looking down at the threshold that he tripped over. *Id.* at *1. In weighing the evidence, the court found the plaintiff failed to show "the rise in the doorframe constituted a dangerous condition giving rise to a duty to warn." *Id.* at *5.

In granting summary judgment, the trial court in this case appeared to rely on most heavily on *Hunter v. Kroger Ltd. P'ship*, 2018 WL 5793562. In *Kroger*, the plaintiff was shopping in the frozen food section of the defendant's grocery store in search for a

---

[6] While the "landscape" of the store's pharmacy may have changed periodically as a result of the scale being placed in various positions, the scale itself, like the rock in *Goumas*, was visible and unobstructed.

particular item.  *Id.* at \*1.  Noticing another patron beginning to walk down the aisle, the plaintiff stepped backward several steps before tripping on a standard "wooden pallet" in the middle of the aisle that had been left there by a Kroger employee, causing her injuries.  *Id.*  Nothing obstructed the plaintiff's view of the pallet prior to tripping over it.  *Id.* at \*1–2.  Kroger admitted to owing a general duty of care but denied the pallet created a risk of "unreasonable harm or peril."  *Id.* at \*1.  Instead, Kroger asserted the plaintiff's injuries were the result of her own lack of awareness of her surroundings.  *Id.*  In response to Kroger's motion for summary judgment, the plaintiff agreed with all of the asserted material facts, which only showed there was a pallet on the floor in the aisle and the plaintiff fell over it.  *Id.* at \*7.  Taken together, the mere fact the plaintiff suffered an injury was not enough to hold the pallet was dangerous or unsafe.  *Id.* at \*8.  Reciting the oft quoted language from *Cagle*, the court in *Kroger* stated, "[g]raceful athletes often trip on yard lines in football or on the foul line in basketball.  People do trip and fall on conditions that are not unsafe."  *Id.* (quoting *Cagle*, 2002 WL 31728866, at \*3) (alteration in original).  Since the pallet was not deemed to be a dangerous condition, the court found Kroger had no duty to warn of or remove the pallet, and the plaintiff's claim failed.  *Id.* at \*8.[7]

In addition to the cases cited by Defendant, this court reached a similar conclusion in *Mooney v. Genuine Parts Co.*, 2016 WL 2859149.  Mrs. Mooney fell and was injured while exiting.  *Id.* at \*1.  The front door of the defendant's store, where there was a three-and-one-half-inch drop in elevation.  *Id.*  The plaintiffs claimed the store was negligent in failing to warn of the change in elevation or by failing to make the "dangerous" walkway safer by implementing remedies such as "a ramp, contrasting floor material or paint, handrails, or warning signs."  *Id.*  Much like Plaintiff in the case at bar, Mrs. Mooney simply stated she did not notice the drop-off as she exited the store despite the fact she entered the store through the same doorway only minutes prior.  *Id.* at \*6.  Mrs. Mooney noted her vision was unimpaired and there was adequate lighting to display the three-inch-and-one-half-inch decline.  *Id.*  After considering the evidence presented, the court held the plaintiffs failed to show there was a genuine issue of material fact regarding the step as a dangerous condition, stating the "scant evidence" would require speculation.  *Id.* at \*7.  The court went on to explain that Mrs. Mooney's fall was not foreseeable given that no one else had been injured due to falling down the step-down in 26 years and noting Mrs. Mooney's successful entrance into the store minutes prior.  *Id.*  The court reached this conclusion despite the defendant's employees acknowledging it was *possible* for a person to fall and injure themselves after *forgetting* about the step.  *Id.* at \*8 (stating the "remote possibility of an injury" was acknowledged but it was not shown to be "probable").

---

[7] Plaintiff argues that summary judgment was inappropriate in this case because the scale in question "was latent and *not* open and obvious" like the pallet in *Kroger*.  This is a misreading of the case, however.  The court in *Kroger* never made an express finding on whether the pallet was "open and obvious" and simply found it was not a dangerous condition.  *See Kroger*, 2018 WL 5793562, at \*8.

- 11 -

These cases lead to the same conclusion in the present case. Plaintiff's trip and fall over the scale, on its own, did not make the scale unsafe or a dangerous condition. *See Barron v. Stephenson*, No. W2004-02906-COA-R3-CV, 2006 WL 16310, at *3 (Tenn. Ct. App. Jan. 4, 2006) (stating "the mere fact that an injury has been sustained" does not automatically raise a presumption of negligence). *See also Kroger*, 2018 WL 5793562, at *7 ("It is well-settled in Tennessee that evidence of an injury, standing alone, does not constitute evidence of a dangerous condition."). The evidence shows Plaintiff successfully traversed the same aisleway she eventually tripped in just moments prior to her fall; the scale remained at the same location throughout Plaintiff's time at the pharmacy window, indicating she would know its location as she egressed from the store; and there is no evidence of another fall as a result of the scale. Further, since Plaintiff agrees nothing obstructed or detracted from her view of the scale (such as store displays, lighting fixtures, or writings within the store), cases where a dangerous condition was found as a result of the plaintiff's distraction are irrelevant to the case-at-bar. *See, e.g.*, *McDavid v. ALDI, Inc.*, No. 2:16-cv-02699-SHM-cgc, 2017 WL 2954424, at *1, *4 (W.D. Tenn. 2017) (denying summary judgment in finding it was foreseeable that a customer would be distracted by merchandise and momentarily forget to avoid the obstacle at issue); *Fox v. Food Lion, Inc., Store # 539*, No. E191100015COAR3CV, 2000 WL 1424805, at *1, *4 (Tenn. Ct. App. Sept. 21, 2000) (holding the store "had reason to expect that the attention of a customer such as [the plaintiff] would be distracted . . . [when] merchandise is placed on shelves and on displays for the purpose of attracting the attention of customers").

Plaintiff's contentions regarding the scale's appearance, likewise, do not establish it as a dangerous condition. Plaintiff asserts the scale's base was a "similar primary color" as the other "randomly placed" floor tiles throughout the store; that the scale was approximately 12" by 14" compared to the tiles that were 12" by 12;" and that, as a result, the scale "looked like a piece of tile on the floor." However, the evidence clearly shows that the scale's base was distinguishable from the surrounding floor tiles. The base of the scale itself had a diamond-shaped pattern on the top; whereas the surrounding tiles, even colored ones, were solid-colored. While the Plaintiff initially stated she agreed the scale was black and white, she later found the scale base to be blue and white, rather than a solid color. Additionally, the base of the scale, like the wooden pallet in *Kroger*, 2018 WL 5793562, rose several inches off of the floor. Given there is no record of any other employee or patron having tripped over the scale prior to Plaintiff, it is difficult to say the scale presented a dangerous circumstance that invited injury.

Based on the foregoing discussion, this court agrees with the circuit court and finds the scale in Defendant's store was not a dangerous condition. Without proving there was a dangerous condition, no duty was owed by Defendant to warn of or remove the scale, and Plaintiff's claim fails for failing to prove an essential element. *See, e.g.*, *Kroger*, 2018 WL 5793562; *Nee*, 106 S.W.3d at 653.

As a result of this holding, the issue of comparative fault raised by Defendant is pretermitted.

## V. CONCLUSION

For the reasons stated herein, the decision of the circuit court is affirmed. Costs of this appeal are taxed to appellant, Shirley Lunsford, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE