FILED

02/20/2026

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 4, 2024 Session

**BRIAN COBLENTZ ET AL. v. TRACTOR SUPPLY COMPANY**

**Appeal from the Circuit Court for Lincoln County**
**No. 2013-CV-85      M. Wyatt Burk, Judge**

_____

**No. M2023-00249-COA-R3-CV**
_____

This is a premises liability case brought by a sales representative for a product vendor who was injured while in a Tractor Supply store performing his job. The trial court entered summary judgment in favor of Tractor Supply. On appeal, this Court affirmed the trial court's decision based upon the conclusion that Tractor Supply was the statutory employer of the sales representative under Tenn. Code Ann. § 50-6-113(a) and was, therefore, shielded by the exclusive remedy provision of the workers' compensation statutes. The Tennessee Supreme Court granted permission to appeal, concluded that Tractor Supply was not the sales representative's statutory employer, and remanded the case to this Court to consider the pretermitted issues. We have determined that the trial court erred in granting summary judgment to Tractor Supply on the issue of whether Tractor Supply owed a duty of care to the sales representative. We vacate and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., joined, and JEFFREY USMAN, J., joined.

William Bliss Hicky and Sarah Michelle Ingalls, and Morgan Juliana Hartgrove, Nashville, Tennessee, for the appellants, Brian Coblentz and Cayce Coblentz.

Richard Colten Jones and Marshall T. Cook, Hendersonville, Tennessee, for the appellee, Tractor Supply Company.

# OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

Brian Coblentz worked as an outside sales representative for Stanley National Hardware ("Stanley National" or "National"). On August 29, 2012, Mr. Coblentz visited Tractor Supply's store in Fayetteville, Tennessee. Mr. Coblentz was injured when a 12-foot steel barn door track fell out of the Stanley National display and struck him on the head.

Mr. Coblentz and his wife ("Plaintiffs") filed a personal injury suit against Tractor Supply Company on August 12, 2013, asserting that Tractor Supply "was negligent and created an unreasonably dangerous and unsafe condition by failing to either properly install and/or maintain its display rack as well as properly stock its merchandise." The complaint also alleged that Tractor Supply "failed to adhere to proper safety procedures" and "failed to implement and/or enforce reasonable policies calculated to prevent its invitees from suffering injury." Further, according to the complaint, Tractor Supply was negligent in failing to warn Mr. Coblentz of the danger presented by the steel track display and failing to inspect the area where he was injured. In its answer, Tractor Supply raised the defense that Mr. Coblenz was injured while in the course and scope of his employment and that his exclusive remedy was under the workers' compensation statutes. The company also raised the defense of contributory negligence.

The parties agreed to stay discovery until Mr. Coblentz's workers' compensation case against Stanley National had concluded. The workers' compensation case was settled in February 2020, and the parties proceeded with discovery. In May 2022, Plaintiffs were permitted to file an amended complaint, which contained all of the allegations of the original complaint and added allegations that Tractor Supply's actions were wanton, willful, and/or reckless.

In October 2022, Tractor Supply filed a motion for summary judgment asserting that Plaintiffs' claims were barred by the exclusive remedy provision of the workers' compensation act and that Plaintiffs could not establish a prima facie case of negligence. Tractor Supply's submissions in support of its motion included excerpts from the depositions of Mr. Coblentz; excerpts from the deposition of Tractor Supply employee Brian Spears; excerpts from the depositions of former Tractor Supply employees Jody Boaz and Leah Holcomb; and a Vendor Agreement executed by Tractor Supply and Stanley National. Plaintiffs responded in opposition to Tractor Supply's motion for summary judgment and filed supporting exhibits, including an affidavit of Mr. Coblentz as well as excerpts from the depositions of Mr. Coblentz, Ms. Boaz, Ms. Holcomb, and Mr. Spears.

The trial court heard the motion for summary judgment on November 21, 2022. On January 26, 2023, the trial court entered an order granting Tractor Supply's motion. The court determined that Tractor Supply was a principal contractor within the meaning of Tenn. Code Ann. § 50-6-113 and immune from tort liability for Mr. Coblentz's injury. Further, the court found that Mr. Coblentz could not establish a prima facie case for negligence under Tennessee premises liability law.

Plaintiffs appealed, presenting the following issues for our consideration: (1) whether the trial court erred in relying on inadmissible evidence in ruling on the motion for summary judgment; (2) whether the trial court erred in determining that Tractor Supply was the principal contractor for purposes of the workers' compensation act; (3) whether the trial court erred in finding that there were no issues of material fact in dispute; and (4) whether the trial court erred in granting summary judgment to Tractor Supply on the premises liability claim. In *Coblentz v. Tractor Supply Company*, No. M2023-00249-COA-R3-CV, 2024 WL 1828677 at *7 (Tenn. Ct. App. Apr. 26, 2024), *rev'd*, 2025 WL 3704465 (Tenn. Dec. 22, 2025), this Court determined that Plaintiffs waived the evidentiary issue and that Tractor Supply was Mr. Coblentz's statutory employer; we, therefore, affirmed the trial court's decision. Judge Usman filed a dissenting opinion. *Id.* at *8.

Our Supreme Court granted Mr. Coblentz's application for permission to appeal and determined that Tractor Supply was not Mr. Coblentz's statutory employer. The Court held that the term "subcontractor" in Tenn. Code Ann. § 50-6-113(a) does not apply to a vendor-vendee relationship. *Coblentz v. Tractor Supply Co.*, --- S.W.3d ----, 2025 WL 3704465, at *12 (Tenn. Dec. 22, 2025). Further, the Court adopted the predominant purpose test to determine whether a vendor-vendee relationship that includes services beyond the sale and delivery of merchandise is governed by that provision. *Id.* at *14. The Supreme Court reversed the judgment of this Court and remanded the case to this Court for consideration of pretermitted issues. *Id.* at *17.

The only remaining issue for determination by this Court on remand is whether the trial court erred in granting summary judgment to Tractor Supply on the premises liability claim.

STANDARD OF REVIEW

We review a trial court's summary judgment determination de novo, with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). This means that "we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* We "must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor." *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *see also Acute Care Holdings, LLC v. Houston Cnty.*, No. M2018-01534-COA-R3-CV, 2019 WL 2337434, at *4 (Tenn. Ct. App. June 3, 2019).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04. When a party moves for summary judgment but does not have the burden of proof at trial, the moving party must either submit evidence "affirmatively negating an essential element of the nonmoving party's claim" or "demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264. Once the moving party has satisfied this requirement, the nonmoving party "'may not rest upon the mere allegations or denials of [its] pleading.'" *Id.* at 265 (quoting TENN. R. CIV. P. 56.06). Rather, the nonmoving party must respond and produce affidavits, depositions, responses to interrogatories, or other discovery that "set forth specific facts showing that there is a genuine issue for trial." TENN. R. CIV. P. 56.06; *see also Rye*, 477 S.W.3d at 265. If the nonmoving party fails to respond in this way, "summary judgment, if appropriate, shall be entered against the [nonmoving] party." TENN. R. CIV. P. 56.06. If the moving party fails to show he or she is entitled to summary judgment, however, "'the non-movant's burden to produce either supporting affidavits or discovery materials is not triggered and the motion for summary judgment fails.'" *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008) (quoting *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)).

ANALYSIS

We must determine if the trial court erred in granting summary judgment to Tractor Supply on the premises liability claim.

Tractor Supply's motion for summary judgment regarding the premises liability claim was based upon the position that Plaintiffs could not establish a prima facie case of common law negligence. In support of this position, Tractor Supply argued that (1) Plaintiffs could not prove that Tractor Supply created the alleged danger or had actual constructive notice of the alleged danger, and (2) Tractor Supply was "not liable because [its] knowledge of the alleged danger was not superior to Plaintiff's." The trial court agreed with Tractor Supply and determined that Mr. Coblentz had not presented sufficient evidence to establish a prima facie case of negligence.

On appeal, Plaintiffs assert that there are material facts in dispute, that Tractor Supply had at least constructive notice that the barn door display was dangerous, and that the trial court erroneously applied a comparative fault analysis at the summary judgment phase.[1]

___

[1] Plaintiffs also make the argument that the trial court defined the dangerous condition too narrowly. While not expressly identified as such by the trial court, the dangerous issue under consideration was the alleged absence of a safety bar on the barn door track display on the day of the accident. Plaintiffs attempt

- 4 -

I.        Undisputed facts

Most of the facts in this matter are undisputed. Mr. Coblentz's job as an outside sales representative required him to visit various hardware stores, including Tractor Supply stores, in his region every four to six weeks. At each hardware store, Mr. Coblentz took inventory of the Stanley National merchandise and wrote orders for needed items. He would also move products that had been misplaced to their proper place, remove inappropriate items, and clean up trash around the National displays. If he saw an unsafe condition in the display, Mr. Coblentz would notify the store manager and contact the appropriate National representative. During the four-to-six-week period between Mr. Coblentz's visits to the Fayetteville Tractor Supply store, Tractor Supply employees would receive the National products ordered by Mr. Coblentz and place them in the displays.

The display at issue in this case was a "track and hanger rack" that held National products, including barn door tracks. The barn door tracks came in sizes of eight, ten, or twelve feet and could be round or square. When received at the store, sets of two round tracks or four square tracks would be banded together. Tractor Supply employees were instructed to remove the bands before placing the barn door tracks in the display. The barn door tracks were heavy and were placed at the end of the display rack, standing up and leaning against the back of the rack between dividers. There was a safety bar at the top of the display rack (parallel to the floor) that hooked into the shelving on both sides. There was also a bar, or "latch," that ran across the middle of the barn door track display; this latch held a cautionary sign asking customers to seek assistance with the barn door tracks.

Tractor Supply admits that it was aware that barn door tracks had fallen and caused injuries in other stores. When originally installed by National, the display rack did not include a safety bar. The safety bars were added in 2005 or 2006, after more than five incidents in Tractor Supply stores in which barn door tracks fell, injuring employees or customers. At that point, Tractor Supply and National discussed the problem, and National implemented the safety bar and installed it in all of its barn door track displays.

On August 29, 2012, Mr. Coblentz was working in the Fayetteville Tractor Supply store. He was standing near the National rope and chain display when a barn door track fell on him from about ten or twelve feet away. No one observed the accident. The store manager and a team leader came to the accident site after hearing a loud noise. Both observed a barn door track lying near Mr. Coblentz; neither saw a safety bar on the floor near him. Mr. Coblentz sustained a head injury and could not remember what occurred after he arrived at the store that day.

---

to draw a distinction between the state of the barn door track display on the day of the accident and "the overall nature of the display without a safety bar in place." We have determined that we need not explore this alleged distinction in light of our analysis of Plaintiffs' other arguments.

In the discovery process, Tractor Supply produced two photographs taken around the time of the accident that show a yellow sheet of paper with the word "STOP" on it posted near the National display area. Such a sign indicated that a third party was preparing to conduct or was just completing an inventory on behalf of Tractor Supply. It is undisputed that, during the inventory process, Tractor Supply would "get[ ] as much product down on the floor so they can get a better count."

Tractor Supply admitted the following facts for purposes of the summary judgment motion only:

26. The pegboard that the barn door rail tracks are supposed to lie against are generally flimsy, usually a quarter inch thick, and there's nothing between the front of the board and the back board, except for maybe one or two braces.
27. The aisle directly behind the barn door track display contained welding equipment from metal shapes to arc welders to compressors to sand blasting materials to sinks, parts cleaners, to blowtorches some of which are "a couple hundred pounds" (arc welders) and bags of blasting sand which are 40-50 pounds apiece.
28. Mr. Coblentz has seen the pegboard shift or move when items on the welding aisle are moved around.
29. At the time of the incident, Mr. Coblentz was in front [of] the display containing metal grab hooks, quick links, cable clamps, chain hooks, and snaps all of which make a clanking sound.
. . .
44. [Leah Holcomb] did not see the safety bar on the display on the day of the incident.
45. Neither Ms. Holcomb nor Jodie Boaz saw a safety bar on the ground on the date of the incident.
46. In the entire time that she worked at Tractor Supply Company, [Leah Holcomb] never see safety bar [sic] in place on the barn door rail display.
. . .
50. Mr. Coblentz was first seen by Jodie Boaz in front of the chain section, approximately 10-12 feet away from the barn door track display.
51. Jodie Boaz had seen the safety bar on the barn door track display, and she has also not seen it on the display, but could not recall whether she saw it on the display when the incident occurred.
52. When the display was being stocked or after it had been stocked, the safety bar would not be in place despite [Tractor Supply] stating it was to stay in place during stocking.
53. The Fayetteville, Tennessee [Tractor Supply] store received "4 bundles of twelve foot rails on 8/20/12."
54. The safety bar would be attached to two (2) brackets.

- 6 -

55. Sometimes only one (1) bracket would be removed with the safety bar and bracket dangling.

56. Sometime all three (3) pieces would fall down completely and never get put back up.

57. With this particular safety bar, it would be taken down and put back up a lot and the hanging bends the safety bar, so it does not fit properly.

58. As a result of it not fitting properly, the safety bar would not be latched securely sometimes or it would not be done correctly because TSC employees could not "figure it out."

II.     Premises liability

Premises owners have a duty to exercise reasonable care to protect persons legally on their property from unreasonable risks of harm. *Easley v. Baker*, No. M2003-02752-COA-R3-CV, 2005 WL 697525, at *6-7 (Tenn. Ct. App. Mar. 24, 2005) (citing *Basily v. Rain, Inc.*, 29 S.W.3d 879, 883-84 (Tenn. Ct. App. 2000)); *see also Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998). A premises owner's duty arises from the "'position of control'" possessed by the premises owner, who is "'normally best able to prevent any harm to others.'" *Trentham v. Mid-Am. Apartments, LP*, 705 S.W.3d 151, 160 (Tenn. 2025) (quoting *McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn. 1980)). In other words, the premises owner's liability "'stems from superior knowledge of the condition of the premises.'" *Trentham*, 705 S.W.3d at 160 (quoting *Blair v. W. Town Mall,* 130 S.W.3d 761, 764 (Tenn. 2004)). The duty of a premises owner includes the duty to "maintain[ ] the premises in a reasonably safe condition either by removing or repairing potentially dangerous conditions or by helping persons avoid injury by warning them of conditions that cannot, as a practical matter, be removed or repaired." *Bowman v. State*, 206 S.W.3d 467, 473 (Tenn. Ct. App. 2006); *see also Eaton v. McLain*, 891 S.W.2d 587, 593-94 (Tenn. 1994) (holding that premises owners owed a duty "to maintain the premises in a reasonably safe and suitable condition" by "either removing or warning against any latent dangerous condition on the premises of which [the premises owners] were aware or should have been aware through the exercise of reasonable diligence").

To establish a prima facie case of negligence in a premises liability claim, a plaintiff must prove five essential elements: "'(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant that was below the standard of care, amounting to a breach of a duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation.'" *Singletary v. Gatlinburlier, Inc.*, No. E2015-01621-COA-R3-CV, 2016 WL 1644475, at *2 (Tenn. Ct. App. Apr. 25, 2016) (quoting *Williams v. Linkscorp Tenn. Six, L.L.C.*, 212 S.W.3d 293, 296 (Tenn. Ct. App. 2006)). For a premises owner to owe a duty of care, the plaintiff must prove either that "'the condition was caused or created by the owner, operator, or his agent,'" or "'if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident.'" *Trentham*, 705 S.W.3d at 160 (quoting *Blair*, 130

S.W.3d at 764). Constructive notice may be shown by "proof that the dangerous or defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of the condition." *Blair*, 130 S.W.3d at 764. Moreover, as recently reaffirmed by our Supreme Court, "a plaintiff may prove a premises owner had constructive notice of a dangerous condition by showing 'that the dangerous condition was part of 'a pattern of conduct, a recurring incident, or a general or continuing condition' such that its presence was reasonably foreseeable to the premises owner." *Trentham*, 705 S.W.3d at 166 (quoting *Blair*, 130 S.W.3d at 766).

A. Notice

The trial court concluded that "Plaintiffs cannot prove [Tractor Supply] had actual or constructive notice of the alleged danger prior to Plaintiff's injury."

Plaintiffs argue that, when viewed in the light most favorable to Plaintiffs, the evidence is sufficient to establish that Tractor Supply had at least constructive knowledge that the barn door rail display was dangerous. We agree. Leah Holcomb, who worked as a team leader at Tractor Supply and had been working at the store for about two months at the time of the accident, testified in her deposition that she never stocked the National display and that she avoided the barn door tracks because she considered them "precarious." In Ms. Holcomb's experience, if she tried to straighten the bars, they would fall "every which way." Ms. Holcomb testified that, on the day of the accident, she did not see the safety bar on the display or on the floor. She further stated that, during the three months that she worked at Tractor Supply, she never saw the safety bar in place on the display.

The trial court disregarded Ms. Holcomb's testimony on the ground that it was contradicted by Mr. Coblentz's testimony. There are two problems with this reasoning. First, Mr. Coblentz testified that he did not recall finding any problems with the National display in his previous visits to the Tractor Supply store in Fayetteville, but that he would have reported any such problems to National and Tractor Supply. This testimony does not necessarily conflict with Ms. Holcomb's testimony. Second, resolving a conflict between two witnesses' statements hinges, at least in part, on the relative credibility of the witnesses, and that assessment is not appropriate at the summary judgment stage. *See Munoz v. Sepulveda*, No. M2024-01002-COA-R3-CV, 2025 WL 2603041, at *6 (Tenn. Ct. App. Sept. 9, 2025); *Knapp v. Holiday Inns, Inc.*, 682 S.W.2d 936, 942 (Tenn. Ct. App. 1984) (stating that "doubt as to the credibility of material witnesses will create a genuine issue of material fact sufficient to render granting a summary judgment improper").

Taking the evidence in the light most favorable to Plaintiffs, as we must do on a motion for summary judgment, there is evidence that the safety bar had been missing for a sufficient period of time that Tractor Supply, in the exercise of reasonable care, should

have been aware of the problem. Therefore, the trial court erred in finding that Plaintiffs could not establish actual or constructive notice.

## B. Superior knowledge

The court further found that, even if there were sufficient evidence regarding notice, Tractor Supply's "knowledge of the alleged danger was not greater than Plaintiff's." Tractor Supply asserts that, under the undisputed facts, it was part of Mr. Coblentz's job to inspect the condition of the display, including the safety bar, when he was in the store and that, therefore, he had superior knowledge of the alleged danger. Plaintiffs argue that the trial court improperly applied a comparative fault analysis at the summary judgment stage. As discussed below, we have concluded that the trial court erred in relying solely upon Mr. Coblentz's "superior knowledge" and failing to consider all of the factors relevant to the determination of whether Tractor Supply had a duty of care to Mr. Coblentz.

Because premises liability is imposed partly because of the owner's superior knowledge of a dangerous condition, the rule developed that "a premises owner has no liability for injuries sustained from dangers that were 'obvious, reasonably apparent, or as well known to the invitee [or licensee] as to the owner.'" *Coln v. City of Savannah*, 966 S.W.2d 34, 40 (Tenn. 1998) (quoting *Kendall Oil Co. v. Payne*, 293 S.W.2d 40, 42 (Tenn. 1955)), *overruled on other grounds by Cross v. City of Memphis*, 20 S.W.3d 642 (Tenn. 2000). In *Coln*, our Supreme Court examined the viability of the open and obvious doctrine in light of our state's adoption of comparative negligence. *Id.* at 42. The Court adopted the majority position, limiting the traditional open and obvious rule in favor of the approach set forth in the Restatement (Second) of Torts. *Id.* Section 343A of the Restatement provides:

> A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

RESTATEMENT (SECOND) OF TORTS, § 343A.

As our Supreme Court noted, the word "known" "denotes not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves." *Coln*, 966 S.W.2d at 41 (citing RESTATEMENT (SECOND) OF TORTS, § 343A, cmt. B). Furthermore, section 343A provides that a premises owner's duty exists "if the harm can or should be anticipated notwithstanding the known or obvious danger." *Id.* In adopting the Restatement approach, the Court explained:

> We also agree that attempting to analyze the duty issue simply by labeling some conditions "open and obvious," without consideration of any

surrounding circumstances, promotes arbitrary and inconsistent results. Moreover, the open and obvious rule is inconsistent with our cases which analyze duty by balancing foreseeability and gravity of harm with feasibility and availability of alternatives that would have avoided the harm.

We deem the Restatement approach to be the better reasoned and more persuasive analysis. The principles stated in the Restatement (Second) of Torts, § 343A relate directly to foreseeability and facilitate consideration of the duty issue. Whether the danger was known and appreciated by the plaintiff, whether the risk was obvious to a person exercising reasonable perception, intelligence, and judgment, and whether there was some other reason for the defendant to foresee the harm, are all relevant considerations that provide more balance and insight to the analysis than merely labeling a particular risk "open and obvious." In sum, the analysis recognizes that a risk of harm may be foreseeable and unreasonable, thereby imposing a duty on a defendant, despite its potentially open and obvious nature.

*Id.* at 42. In summary, the Supreme Court held that the open and obvious rule did not automatically relieve the defendant of a duty of care. *Id.* at 43. Rather, a court must analyze the duty issue as in any other premises liability case, "balancing of the foreseeability and gravity of the potential harm against the burden imposed in preventing that harm." *Id.* at 39. The Court specified that, "if the foreseeability and gravity of harm posed from a defendant's conduct, even if 'open and obvious,' outweighed the burden on the defendant to engage in alternative conduct to avoid the harm, there is a duty to act with reasonable care." *Id.* at 43. Once a duty has been established, "the circumstances of the case are then analyzed under comparative fault." *Id.*

A more recent case applying the principles announced in *Coln* is *Vaughn v. DMC-Memphis, LLC*, No. W2019-00886-COA-R3-CV, 2021 WL 274761 (Tenn. Ct. App. Jan. 27, 2021). Tina Vaughn filed suit against DMC for injuries she sustained when she fell on standing water in the bathroom of a restroom in DMC's building, which housed Delta Medical Center. *Vaughn*, 2021 WL 274761, at *1. The trial court granted summary judgment in favor of DMC, citing the undisputed facts that Ms. Vaughn saw the water on the floor prior to her fall and, nevertheless, voluntarily proceeded into the restroom and then fell. *Id.* at *11. On appeal, this Court reviewed the abrogation of the open and obvious doctrine by the Supreme Court in *Coln* and the current requirement that courts "apply the general duty analysis to even those cases that involve an allegedly open and obvious danger." *Id.* at *8. The "'central component' of the duty analysis" is foreseeability. *Id.* (quoting *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 366 (Tenn. 2008)). At the duty stage of the analysis, "'the courts are simply ascertaining whether the defendant was obligated to be vigilant of a certain sort of harm to the plaintiff.'" *Id.* (quoting *Satterfield*, 266 S.W.3d at 367). The duty analysis requires a court to weigh many factors:

"When the existence of a particular duty is not a given or when the rules of the established precedents are not readily applicable, courts will turn to public policy for guidance. Doing so necessarily favors imposing a duty of reasonable care where a defendant's conduct poses an unreasonable and foreseeable risk of harm to persons or property. When conducting this analysis, the courts have considered, among other factors: (1) the foreseeable probability of the harm or injury occurring; (2) the possible magnitude of the potential harm or injury; (3) the importance or social value of the activity engaged in by the defendant; (4) the usefulness of the conduct to the defendant; (5) the feasibility of alternative conduct that is safer; (6) the relative costs and burdens associated with that safer conduct; (7) the relative usefulness of the safer conduct; and (8) the relative safety of alternative conduct.

With these factors firmly in mind, Tennessee's courts use a balancing approach to determine whether the particular risk should give rise to a duty of reasonable care. A duty arises when the degree of foreseeability of the risk and the gravity of the harm outweigh the burden that would be imposed if the defendant were required to engage in an alternative course of conduct that would have prevented the harm. The foreseeability and gravity of the harm are linked insofar as the degree of foreseeability needed to establish a duty is inversely proportional to the magnitude of the foreseeable harm. The greater the risk of harm, the less degree of foreseeability is required. During the balancing process, it is permissible for the courts to consider the contemporary values of Tennessee's citizens."

*Id.* at *9 (quoting *Satterfield*, 266 S.W.3d at 365-366) (citation modified).

In *Vaughn*, this Court found no error in the trial court's conclusion that, under the undisputed facts, the dangerous condition was open and obvious. *Id.* at *11. However, under the applicable law, this fact was not sufficient to end the inquiry. *Id.* We determined that the trial court failed to engage in the required analysis of foreseeability and gravity of harm and the other applicable factors in order to decide if a duty was owed. *Id.* In finding the trial court's ruling deficient, this Court stated:

[T]he trial court also has a duty to ensure that its rulings are adequately explained. *See Smith v. UHS of Lakeside,* 439 S.W.3d at 314 (noting that in addition to being a product of the trial court's independent judgment, the trial court's decision must be "adequately explained"). This has been described as requiring an explanation as to "why a particular result is correct based on the applicable legal principles[.]" *Id.* at 313 (citing Chad M. Oldfather, *Writing, Cognition, and the Nature of the Judicial Function*, 96 Geo. L.J. 1283, 1334 (2008)). The trial court's order contains many factual "findings,"

- 11 -

a detailed discussion of the general law surrounding premises liability, a thorough discussion of the proof presented, but very little discussion of the trial court's actual legal reasoning regarding its ultimate conclusion. Importantly, although foreseeability is the touchstone of the duty analysis, *see Satterfield*, 266 S.W.3d at 366, this factor is simply not mentioned in any way by the trial court. The trial court's order leads this court to believe that once the trial court concluded that the danger allegedly posed by the water in this case was open and obvious, this fact negated the essential element of duty. Clearly, however, a determination that a danger is open and obvious is only the tip of the iceberg in determining the legal issue of duty. *See id.* (setting forth a detailed and multi-factored test for determining duty); *Coln*, 966 S.W.2d at 36-37 (stating that duty should at least consider foreseeability, gravity of harm, and the burden to engage in alternative conduct).

*Id.* This Court also found DMC's efforts to support the result reached by the trial court deficient, noting that DMC relied upon caselaw related to comparative fault, not duty, and emphasizing that "the question of comparative fault only becomes relevant once a duty is found." *Id.* at *12. DMC argued, in part, that it was not foreseeable that Ms. Vaughn would walk into the restroom despite the obvious danger. We disagreed:

The problem with this argument is that it does little more than attempt to resurrect the open and obvious doctrine. Indeed, at least one Tennessee legal scholar has cautioned against allowing this exact type of analysis: "[The] court might be tempted to conclude that a defendant could not have foreseen a plaintiff's injury because the obviousness of the danger alone rendered the plaintiff's behavior unreasonable. If such reasoning is accepted, the obvious danger doctrine will survive in the duty portion of the analysis despite the *Coln* majority's claims that the doctrine has been abrogated." Brian P. Dunigan & Jerry J. Phillips, *Comparative Fault in Tennessee: Where Are We Going, and Why Are We in This Handbasket?*, 67 Tenn. L. Rev. 765, 817 (2000) [hereinafter Dunigan & Phillips] (arguing that "it will rarely be appropriate to conclude as a matter of law that the defendant could not foresee the plaintiff's injury because of the obviousness of a danger" because such "a conclusion effectively would resurrect the 'open and obvious danger' doctrine rejected by *Coln*"). Tennessee courts have likewise rejected similar attempts to argue a "somewhat veiled version" of the "open and obvious" doctrine. *Powell*, 2000 WL 987301, at *4 (Tenn. Ct. App. July 10, 2000) (rejecting the defendant's argument that no duty of care was owed to the plaintiff because he acted unreasonably). Indeed, the Tennessee Supreme Court has held that a defendant's assertion that a plaintiff confronted a known and obvious danger is properly analyzed under the principles of comparative fault, rather than duty. *See Perez v. McConkey*, 872 S.W.2d 897, 900 & 906 (Tenn. 1994) ("Secondary implied assumption of risk applies when the

plaintiff, either reasonably or unreasonably, decides to encounter a known risk. . . . [W]e do not consider it necessary or desirable to retain the doctrine of secondary implied assumption of risk as a separate defense. Rather, the reasonableness of a party's conduct in confronting a risk should be determined under the principles of comparative fault.") (footnote omitted).

*Id.* at *12. In the end, this Court vacated the trial court's ruling that Ms. Vaughn could not establish that DMC owed her a duty of care.[2] *Id.* at *14.

In the present case, the trial court did not engage in an analysis of foreseeability and the gravity of harm to determine whether a duty was owed. The court determined that, under the undisputed facts, "Plaintiff's knowledge of the alleged danger was likely greater than anyone else's, given his job duties and the number of times he inspected National's track and hanger displays." Under the *Coln* teachings, a court must first determine duty by considering foreseeability and the gravity of harm, even where the plaintiff has knowledge of the danger at issue. We agree with Plaintiffs that the trial court jumped to a comparative fault analysis in comparing the fault of Mr. Coblentz with that of Tractor Supply. As Tractor Supply emphasizes, it was part of Mr. Coblentz's job responsibilities to inspect the safety bar when he was in the store.[3] At the same time, it is undisputed that Mr. Coblentz

---

[2] The Court, in *Vaughn*, went on to consider the question of comparative fault and concluded that reasonable minds could differ "as to whether Ms. Vaughn was presented with a reasonable alternative to using the flooded restroom." *Vaughn*, 2021 WL 274761, at *16. Therefore, we concluded that the trial court erred in granting summary judgment to DMC on the issue of comparative fault. *Id.*

[3] Another line of cases relates to a premises owner's duty to create a reasonably safe work environment for an independent contractor. In *Blair v. Campbell*, 924 S.W.2d 75 (Tenn. 1996), our Supreme Court established what is often referred to as the contractor exception to premises liability. Sarah Campbell hired Jack Blair to perform repair work on a duplex she was preparing for rental or sale. *Blair*, 924 S.W.2d at 76. After Mr. Blair had done some initial repairs, Ms. Campbell asked him to "repair or replace the roof over the porch of the duplex because 'it was leaking.'" *Id.* Mr. Blair had total control over how he would accomplish these repairs. *Id.* As Mr. Blair stepped out onto a ladder propped against the gutter by one of Mr. Blair's employees, "the wood supporting the gutter collapsed, causing the ladder to turn." and Mr. Blair "was thrown to the ground." *Id.* Mr. Blair then brought a negligence action against Ms. Campbell, asserting that she failed to provide a reasonably safe place for him to work. *Id.* The trial court granted summary judgment in favor of Ms. Campbell. *Id.*
    The Supreme Court, in *Blair*, expressly adopted the contractor exception recognized in *Shell Oil Co. v. Blanks*, 330 S.W.2d 569 (Tenn. Ct. App. 1959), and quoted the following description of the rule:
        "An exception to the general rule is recognized where the risks arise from, or are intimately connected with, defects of the premises or of machinery or appliances located thereon which the contractor has undertaken to repair. As to contracts for such repair work, it is reasoned that the contract is sufficient in itself to impart notice of a defect, the extent of which the repairman must discover for himself. This is merely to say that one assumes the risk of a known danger or of an undertaking which is inherently dangerous."
    *Blair*, 924 S.W.2d at 76-77 (quoting *Shell*, 330 S.W.2d at 571). It was undisputed that Mr. Blair was hired to repair the porch roof, and the Court found that "the repair contract itself is sufficient to put the contractor on notice of a defect in the premises, and it is the contractor's responsibility to determine the extent of the

- 13 -

defect." *Id.* at 77. The Court determined that, under the contractor exception, Ms. Campbell had no duty to provide a reasonably safe workplace to Mr. Blair. *Id.* In reaching this result, the Supreme Court stated that "the policy of placing the risk of incurring physical harm during a repair job on a contractor holding himself or herself out as an expert in that work, as opposed to the lay premises owner, is not unjustified, at least as long as the owner does not willfully or intentionally harm the contractor." *Id.* at 78.

There have been subsequent cases involving independent contractors working in a plant or factory. In *Miranda v. CSC Sugar, LLC*, No. W2017-01986-COA -R3-CV, 2018 WL 3302035, at *1 (Tenn. Ct. App. July 5, 2018), a construction worker fell from a scaffolding while working on a renovation at a factory. The worker was employed by an independent contractor hired by CSC Sugar, LLC to renovate its warehouse. *Id.* At the time of the accident, the worker was using an electric screw gun powered by a long extension cord, which had to be placed across a doorway in order to access an outlet. *Id.* One of CSC Sugar's employees drove a forklift through the doorway; the forklift became entangled with the extension cord, pulling the scaffolding down and causing the worker to fall and sustain injuries. *Id.* The trial court granted summary judgment in favor of the premises owner on the ground that the company had no duty to warn of the dangerous condition that the worker or his co-employee created and knew about. *Id.*

In reversing the grant of summary judgment, this Court emphasized the principle that, "'An owner of premises who employs a contractor to perform work on the property, but who remains in control of the premises where the work is being done, owes to the employees of the contractor a duty to exercise ordinary care in the management of the premises in order to avoid exposing the employees to an unreasonable risk of harm.'" *Id.* at *4 (quoting *Johnson v. EMPE, Inc.*, 837 S.W.2d 62, 65 (Tenn. Ct. App. 1992)). This Court found that there was a material factual dispute as to whether the worker or his co-employee "were in control of the environment in which they were working." *Id.* Further, the court noted the Supreme Court's abrogation of the open and obvious doctrine in *Coln*, thereby making the proper analysis "whether the foreseeability and gravity of harm posed by Appellee's conduct, even if 'open and obvious,' outweigh the burden of [the premises owner] to engage in alternative conduct." *Id.* at *5. There were conflicts in the testimony as to whether the premises owner's employees were aware of the potential problems with the extension cord and whether the forklift driver stopped and honked his horn before backing through the doorway. *Id.* at *6. This Court determined that such factual disputes were relevant to the question of whether the premises owner satisfied its duty of care to ensure a safe work area. *Id.*

Similar issues are presented in a premises liability case now pending before the Supreme Court, *Lowe v. Bridgestone Americas Tire Operations, LLC*, No. M2023-01774-COA-R3-CV, 2024 WL 4850697 (Tenn. Ct. App. Nov. 21, 2024), *perm. app. granted*, (Tenn. May 29, 2025). In that case, Mr. Lowe was employed as a millwright by Cumberland Machine Company, which was an independent contractor of Bridgestone and had "dedicated space inside the Bridgestone plant." *Id.* at *1. The vent holes in a 2200-pound tire mold were clogged with rubber, "and the mold was brought to Cumberland's mold-repair shop (within the Bridgestone facility) so that [Mr. Lowe] could clear the vent holes." *Id.* The tire mold, which was suspended in the air by a crane with two straps and two bolts, fell and landed on Mr. Lowe, fatally injuring him. *Id.* The trial court granted Bridgestone's motion for summary judgment, finding that Bridgestone owed no duty of care to Mr. Lowe. *Id.* Evidence presented at the summary judgment stage showed that Cumberland was required to follow Bridgestone's safety protocols and that Bridgestone provided at least some of the equipment used for the lifting and turning of the molds. *Id.* at *6. There was also evidence that Bridgestone had implemented other safety measures, including a D-ring capture system for lifting the molds, in other shops within the plant, but not in the Cumberland shop. *Id.* at *8. This Court concluded that there were material disputes of fact as to whether Bridgestone undertook a duty to inspect Cumberland's repair shop and whether the accident was foreseeable. *Id.* at *9-10. Therefore, the trial court's grant of summary judgment was reversed. *Id.* at *11.

The contractor exception may not apply directly here since Mr. Coblentz was a product vendor and was not hired to repair the safety bar. However, one of his job duties was to check whether the safety bar was in place and to report any problems with it. These cases are instructive in their focus upon the importance of the contractor's control of the work environment to the application of the exception. In its decision in

visited the store every six to eight weeks and that it was the responsibility of Tractor Supply to restock the National display. In order to restock the barn door rails, it was necessary to open the safety bar and then replace it. Further, as stated above, there is evidence that the safety bar may not have been in place prior to Mr. Coblentz's arrival at the store on the day of the accident.

In reviewing a trial court's grant of summary judgment, we must make a fresh determination as to whether the requirements of Tenn. R. Civ. P. 56 have been met. *Vaughn*, 2021 WL 274761, at \*14. Tractor Supply had the burden "to either affirmatively negate an essential element of [Mr. Coblentz's] claim or demonstrate that [Mr. Coblentz's] evidence is insufficient" to establish his claim. *Id.* In order for Tractor Supply to meet its burden at the summary judgment stage on the duty of care element, "Tennessee law sets forth a complex, multi-step analysis that must be undertaken." *Id.* Tractor Supply did not provide undisputed proof to show that the harm was unforeseeable or to address the gravity of harm or the burden of engaging in alternative conduct. Taken in the light most favorable to Mr. Coblentz, some of the evidence suggests that the absence of the safety bar was foreseeable. We cannot conclude that Tractor Supply met its burden to establish that it was "not 'obligated to be vigilant of [the type] or harm'" that befell Mr. Coblentz. *Vaughn*, 2021 WL 274761, at \*13 (quoting *Satterfield*, 266 S.W.3d at 367). Therefore, we vacate the trial court's ruling.[4]

CONCLUSION

The judgment of the trial court is vacated and the case is remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed against the appellee, Tractor Supply, for which execution may issue if necessary.

/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE

---

this case, our Supreme Court determined that, for purposes of the workers' compensation analysis, Mr. Coblentz's primary role was to provide products to Tractor Supply. *Coblentz*, 2025 WL 3704465, at \*17. He did, however, have ancillary duties, including checking the display's safety bar. The extent to which Mr. Coblentz was or was not required to comply with Tractor Supply's related safety policies would be relevant to the duty analysis.

[4] Unlike in *Vaughn*, the trial court in this case did not reach the issue of comparative fault, a question of fact. *See Vaughn,* 2021 WL 274761, at \*14.